Tammy Renee Brown ("the mother") appeals from a judgment reducing the amount of child support payable by Jeffrey Mark Brown ("the father").
The parties were divorced in January 2001; they have three children who were 14, 8, and 6 years old at the time of the trial in this case. The divorce judgment awarded the parties joint legal custody of the children, awarded the mother primary custody of the children, and granted the father extensive visitation, including two nights each week. Pursuant to an agreement of the parties, the divorce judgment required the father to pay child support in the amount of $1,700 per month,[1] together with the cost of the children's education at Briarwood Christian School ("Briarwood") so long as his income was more than $75,000 per year. The divorce judgment granted the father the primary responsibility for the children's academic activities if the parties were unable to agree. The cost of the Briarwood fees for all three children was approximately $1,300 per month for the 2005-2006 school year.
In June 2003, the trial court entered a consent judgment that, among other things, modified the parties' holiday and summer visitation schedule and required the father to provide medical insurance coverage on the children and to pay all noncovered medical expenses for the children.
In April 2005, the father filed this action, alleging that his income had declined to less than $75,000 per year, requesting that his child-support obligation be reduced, and requesting relief from his obligation to pay the children's private-school expenses. *Page 714 
The mother filed a motion to maintain the status quo, requesting that the father continue to pay for the children's private-school expenses until a trial on the merits. That motion was granted on May 5, 2005. The mother also filed a counterpetition requesting that she be awarded sole legal custody of the children and that the father's visitation be reduced to standard visitation.
The case was tried ore tenus on August 15, 2005. The trial court heard testimony from the parties, the parties' 14-year-old daughter, and Marcy Brown, the father's new wife. On August 31, 2005, the trial court entered a judgment finding (1) that the father's income had declined substantially through no fault of the father, (2) that the father's "current income is $62,000 per year and is to the best of his ability," and (3) that the father was obligated to pay the private-school expenses if his income exceeds $75,000.[2] The judgment reduced the father's child-support obligation from $1,700 per month to $1,025 per month.
The mother filed a motion under Rule 59, Ala. R. Civ. P., contending (1) that the trial court erred in its calculation of the father's income and the father's child-support obligation, (2) that evidence introduced at trial proved that the father had unilaterally and improperly deducted a total of approximately $1,284 from several of his child-support payments to pay for expenses allegedly incurred on behalf of the children, and (3) that the trial court erred in not awarding the mother sole legal custody of the children and in not reducing the father's visitation. On November 2, 2005, the trial court entered an amended judgment requiring the oldest child to remain in school at Briarwood at the mother's expense until her graduation, requiring the two younger children to remain at Briarwood until the end of the 2005-2006 school year at the mother's expense, and requiring the parties to attend counseling to develop better communication skills.
The mother appeals, contending (1) that the trial court erred in finding that the father's income had decreased to less than $75,000 per year, (2) that the trial court erred in its calculation of child support because it incorrectly determined the father's income, (3) that the trial court erred in not finding the father in contempt for making the unilateral deductions from his child-support payments, and (4) that the trial court abused its discretion in failing to award the mother sole legal custody of the children and in not reducing the father's mid-week visitation.
At the time of the divorce, the father was employed as a foreman with Acton Construction Company ("Acton"), which builds houses in Shelby County. The father earned approximately $120,000 in 2001. In 2001, the mother was unemployed and had little or no income.
In 2003, the father reactivated a business that he owned, Distinctive Builders, Incorporated ("Distinctive"), and began preparing to leave his employment with Acton. The father testified that the owners of Acton were planning to retire and to bring their sons-in-law into the business. According to the father, the owners of Acton encouraged him to leave Acton.
In 2003 or early 2004, the father began working part-time for Distinctive building new houses while continuing to work for Acton. In August 2004, the father left Acton and began working full-time for Distinctive. During 2004, Distinctive sold *Page 715 
seven new houses, at prices ranging from $319,900 to $433,652. In 2005, Distinctive sold six houses through the date of the August 2005 trial. The father testified that Distinctive had several houses under construction at the time of the trial but that only one of those houses would be completed in time to be sold in 2005.
The parties dispute the amount of the father's income for 2004 and 2005. It is not disputed that the father earned approximately $54,000 from Acton before his resignation in August 2004. The parties dispute the amount of the father's income from Distinctive. The father testified that Distinctive made little or no profit on most of the houses that it built and sold. The mother argues that Distinctive made profits in excess of $40,000 on each of the seven houses that it sold in 2004.[3] The record contains a 2004 federal corporate income-tax return for Distinctive that shows a net income of $139,769 and an amended 2004 federal corporate income-tax return for Distinctive that shows a net income of $33,844. The father is the sole shareholder of Distinctive, and all of Distinctive's net income is allocated to him.
There is little evidence of the father's income for 2005. The father's form CS-41 ("Child Support Obligation Income Statement Affidavit") reflects a monthly income of "$3,375 or less." That amount is consistent with the father's testimony that for the first eight months of 2005 he received a total draw or salary of $27,000 from Distinctive, which was paid as funds were available. The record does not include Distinctive's financial statements for any part of 2005.
The mother contends that the trial court erred in finding that the father's income was less than $75,000 a year, thus allowing the father to cease paying the costs of the children's private-school education. She also contends that the trial court erred when it found the father's income for purposes of computing child support to be only $62,000 per year.
The trial court's factual determination concerning the father's income is presumed to be correct and "will not be disturbed on appeal, absent a showing that the ruling is unsupported by the evidence and thus is plainly and palpably wrong." Jackson v.Jackson, 777 So.2d 155, 158 (Ala.Civ.App. 2000).
Rule 32(B), Ala. R. Jud. Admin., which governs the computation of child support, provides in part:
 "(2) Gross Income.
 "(a) `Gross income' includes income from any source, and includes, but is not limited to, salaries, wages, commissions, bonuses, dividends, severance pay, pensions, interest, trusts, annuities, capital gains, Social Security benefits, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits, gifts, prizes, and preexisting periodic alimony.
 ". . . .
 "(3) Self-Employment Income.
 "(a) For income from self-employment, rent, royalties, proprietorship of business, or joint ownership of a partnership or closely held corporation, `gross income' means gross receipts minus ordinary and necessary expenses required to produce such income, as allowed by the Internal Revenue Service, with the exceptions noted in section (B)(3)(b).
 "(b) `Ordinary and necessary expenses' does not include amounts allowable by the Internal Revenue Service for *Page 716 
the accelerated component of depreciation expenses, investment tax credits, or any other business expenses determined by the court to be inappropriate for determining gross income for purposes of calculating child support."
This court has held that in cases involving a parent who owns an interest in a closely held corporation, the parent's income for purposes of determining child support is "the business's net income, some of which is reinvested in the business, rather than the `owner's draw.'" Puckett v. Summerford,706 So.2d 1257, 1258 (Ala.Civ.App. 1997). See also Hall v.Hubbard, 697 So.2d 486, 488 (Ala.Civ.App. 1997).
In this case, the father's 2004 income included the father's $54,000 salary from Acton and Distinctive's net income of $33,844, which totals $87,844. As to the father's 2005 income, the trial court found the father's current income to be $62,000 per year, but we cannot determine the basis for that finding. According to the father, he received an average salary or draw of $3,375 per month from Distinctive from January 2005 through August 2005, i.e., $40,500 per year. However, the relevant income is Distinctive's net income, not the father's draw or salary. The record does not include any financial statements for Distinctive or any basis for determining Distinctive's annual net income to be $62,000.[4]
In an October 2004 loan application, the father estimated his annual income to be $90,000. The evidence in the record shows that the father's lifestyle and net worth have not materially decreased since 2003, when he was earning approximately $120,000. The father's financial statements show a net worth in excess of $900,000, the mortgage payment on the father's present home is approximately $3,800 per month, and there is evidence in the record indicating that the father has spent a substantial amount on luxury automobiles and travel.
The father had the burden of establishing his income for purposes of determining child support, Reeves v.Reeves, 894 So.2d 712, 714 (Ala.Civ.App. 2004). We do not find substantial, if any, evidence to support the trial court's finding that the father's income was $62,000 per year. Thus, we must reverse the trial court's judgment as to this issue and remand the cause for the trial court to make such findings as are supported by the evidence and to enter a judgment computing a child-support award in accordance with Rule 32, Ala. R. Jud. Admin., and the parties' separation agreement that was incorporated into the divorce judgment, including, if appropriate, payment for the children's private-school expenses.
The mother also contends that the trial court erred in denying, without explanation, the mother's claims that the father was in contempt of court for failing to pay the full amount of child support on two occasions. A determination regarding contempt of court is committed to the sound discretion of the trial court, and we will affirm unless the trial court abused its discretion or "unless the judgment of the trial court is unsupported by the evidence so as to be plainly and palpably wrong. . . ."Stack v. Stack, 646 So.2d 51, 56 (Ala.Civ.App. 1994). The father testified at trial that he deducted from his child-support payments certain expenses, primarily clothing, that he paid on behalf of the children. See State ex rel.Burt v. Morgan, 716 So.2d 729, 732 (Ala.Civ.App. 1998). We have reviewed the record, and *Page 717 
we cannot conclude that the trial court abused its discretion in refusing to find the father in contempt with regard to child support.
Finally, the mother contends that the trial court erred in not awarding her sole legal custody of the children and in not reducing the father's visitation. We note the presumption of correctness accorded to the trial court's judgment:
 "When this Court reviews a trial court's child-custody determination that was based upon evidence presented ore tenus, we presume the trial court's decision is correct: `"A custody determination of the trial court entered upon oral testimony is accorded a presumption of correctness on appeal, and we will not reverse unless the evidence so fails to support the determination that it is plainly and palpably wrong. . . ."' Ex parte Perkins, 646 So.2d 46, 47 (Ala. 1994), quoting Phillips v. Phillips, 622 So.2d 410, 412 (Ala.Civ.App. 1993) (citations omitted). This presumption is based on the trial court's unique position to directly observe the witnesses and to assess their demeanor and credibility. This opportunity to observe witnesses is especially important in child-custody cases. `In child custody cases especially, the perception of an attentive trial judge is of great importance.' Williams v. Williams, 402 So.2d 1029, 1032
(Ala.Civ.App. 1981)."
Ex parte Fawn, 810 So.2d 631, 633 (Ala. 2001).
We have reviewed the record, and we cannot conclude that the trial court abused its discretion in refusing to modify the existing custody and visitation provisions.
Based on the foregoing, we affirm the judgment as to the mother's contempt petition regarding child support and the mother's counterpetition concerning a change of custody and visitation. We reverse the judgment and remand the cause for the trial court to recalculate the father's child-support obligation and to reconsider the father's obligation to pay the children's private-school expenses in light of its recalculation of the father's income.
The appellant's request for the award of an attorney fee on appeal is denied.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
CRAWLEY, P.J., and THOMPSON, PITTMAN, and BRYAN, JJ., concur.
[1] The father's annual income was slightly more than $10,000 per month, or $120,000 per year, the maximum amount of income to which the Child Support Guidelines of Rule 32, Ala. R. Jud. Admin., are applicable.
[2] The judgment did not explicitly declare that the father was no longer required to pay the children's private-school expenses, but this conclusion follows logically from the factual finding.
[3] The mother's argument is based on her erroneously equating net sale proceeds (gross proceeds less closing expenses and mortgage payoffs) with net profit.
[4] In his brief to this court, the father does not state the amount of his income, for 2004 or 2005, nor does he discuss the appropriate method of computing his income.