PER CURIAM.
D.C.S. appeals the Madison Juvenile Court’s judgment insofar as it denied his motion seeking leave to amend his counterclaim, awarded L.B. (“the mother”) $1,025 in child support per month, awarded the mother a child-support arrearage in the amount of $2,000, denied D.C.S. a credit for pendente lite child support that he had paid, denied D.C.S. joint legal custody of J.M.B. (“the child”), and awarded the mother an attorney’s fee in the amount of $5,700. We affirm.
On April 28, 2005, the mother petitioned the juvenile court seeking a judgment adjudicating D.C.S. as the biological father of the child. In her petition, she also sought, among other things, an award of custody *516 of the child subject to D.C.S.’s visitation rights, an award of child support in accordance with Rule 32, Ala. R. Jud. Admin., and an award of an attorney’s fee.
The juvenile court then entered a pen-dente lite order pursuant to the parties’ pendente lite settlement agreement. That settlement agreement is not included in the record on appeal. Regarding paternity, the juvenile court’s pendente lite order states: “The parties stipulate that [D.C.S.] is the biological father of [the child] .... ” Also, that pendente lite order, among other things, awarded the mother pendente lite custody subject to the visitation rights of D.C.S. (“the father”) and awarded the mother pendente lite child support in the amount of $800 per month.
The father then answered and counterclaimed seeking, among other things, an award of joint legal custody of the child and “standard” visitation rights. On February 26, 2007, the father moved for leave to amend his counterclaim. In the father’s proposed amended counterclaim, he sought an award of joint physical custody and an award of an attorney’s fee. He also sought an order requiring the mother to show cause why she should not be held in contempt for her alleged violation of the visitation provision in the pendente lite order.
The juvenile court held an ore tenus proceeding on the parties’ pleadings on March 20, 2007. At the conclusion of the ore tenus proceeding, the juvenile court rendered an oral judgment. On April 13, 2007, the juvenile court entered a written judgment denying the father’s motion seeking leave to amend his counterclaim and denying his counterclaim seeking joint legal custody of the child. Also, the juvenile court’s judgment awarded the father “standard” visitation rights. Additionally, that judgment found that the father was voluntarily unemployed and imputed to him an income in the amount of $7,414 per month. The juvenile court then awarded the mother child support in the amount of $1,025 per month, a child-support arrear-age in the amount of $2,000, and an attorney’s fee in the amount of $5,700.
The father moved the juvenile court to alter, amend, or vacate its judgment. The juvenile court denied the father’s post-judgment motion. The father then timely appealed.
We first address the father’s argument contending that the juvenile court erred in denying his motion for leave to amend his counterclaim.
Rule 15(a), Ala. R. Civ. P., provides, in pertinent part:
“(a) Amendments. Unless a court has ordered otherwise, a party may amend a pleading without leave of court, but subject to disallowance on the court’s own motion or a motion to strike of an adverse party, at any time more than forty-two (42) days before the first setting of the case for trial, and such amendment shall be freely allowed when justice so requires. Thereafter, a party may amend a pleading only by leave of court, and leave shall be given only upon a showing of good cause.”
(Emphasis added.) Regarding Rule 15(a), our supreme court has stated:
“ ‘ “Although Rule 15(a) itself calls for liberal amendment, this Court has held consistently that ‘the grant or denial of leave to amend is a matter that is within the discretion of the trial court and is subject to reversal on appeal only for an abuse of discretion.’ ” ’ Rector v. Better-Houses, Inc., 820 So.2d 75, 78 (Ala.2001) (quoting Boros v. Baxley, 621 So.2d 240, 245 (AIa.1993)). ‘ “Rule 15, [Ala. R. Civ. P.], is not carte blanche authority to amend a complaint at any time.” ’ Rector, 820 So.2d at 78 (quoting Stallings v. *517 Angelica Uniform Co., 388 So.2d 942, 947 (Ala.1980), quoting in turn Stead v. Blue Cross-Blue Shield of Alabama, 294 Ala. 3, 6, 310 So.2d 469, 471 (1975)). ‘ “Discretion rests in the trial judge to deny amendments for good cause.... ‘[I]f the court determines ... that a party has had sufficient opportunity to state a claim or revise his answer to a complaint but has failed to do so, leave to amend may properly be denied.’ ” ’ Ex parte Tidmore, 418 So.2d 866, 868-69 (Ala.1982) (quoting Stallings, 388 So.2d at 947).”
Gulf Coast Realty Co. v. Professional Real Estate Partners, Inc., 926 So.2d 992, 1003 (Ala.2005).
In the case now before us, the juvenile court first set the matter for trial on May 1, 2006, and later rescheduled the trial for March 20, 2007. Therefore, the father’s February 26, 2007, motion for leave to amend his counterclaim was filed after the first setting of the case for trial. Thus, the father was required to show good cause in order for the juvenile court to grant the father’s motion.
In the father’s motion, he sought a judgment awarding him joint physical custody, awarding him an attorney’s fee, and finding the mother in contempt. As grounds for leave to amend his counterclaim, the father stated that he had recently retained new counsel and that his former counsel had “fail[ed] to completely protect [the father’s] rights and/or to adjudicate all issues which should be joined herein.” Regarding his motion for contempt, the father alleged that the mother had violated the visitation provision of the pendente lite order “[fjrom and after the entry of that [order].”
“ ‘[U]ndue delay in filing an amendment, when it could have been filed earlier based on the information available or discoverable, is in itself ground for denying an amendment.’ Puckett, Taul & Underwood, Inc. v. Schreiber Corp., 551 So.2d 979, 984 (Ala.1989).” Gulf Coast Realty Co. v. Professional Real Estate Partners, Inc., 926 So.2d at 1003-04. The father did not allege that he sought joint physical custody and an attorney’s fee based on information that was not previously available or discoverable. Furthermore, the father’s motion does not state when he discovered information regarding the mother’s alleged violation of the pendente lite order. We, therefore, conclude that the father failed to state good cause showing why he did not amend his counterclaim more than 42 days before the first setting of the case for trial. Accordingly, we conclude that the juvenile court did not exceed its discretion in denying the father’s motion for leave to amend his counterclaim.
Next, we address the father’s argument contending that the juvenile court erred by finding him voluntarily unemployed and by imputing to him an income of $7,414 per month. The evidence established that the father started a company named D.S. Homes[1] in 2001. D.S. Homes is in the business of building and selling custom homes. The father has the sole interest in D.S. Homes, a Subchapter S corporation.
The father introduced his Social Security statement as evidence of the income he had earned between 2001 and 2005. According to that statement, he did not earn any income between 2001 and 2004 and only earned $5,000 in 2005.
The father testified regarding the income he and D.S. Homes had earned in *518 2006. According to the father, D.S. Homes sold two houses in 2006. D.S. Homes sold a house located on Harbor View Drive (“the Harbor View Drive house”), earning a gross profit of $61,736. However, D.S. Homes realized a net loss of $15,464 regarding the sale of that house.[2] Nevertheless, the father admitted that he received proceeds from the sale of the Harbor View Drive house in the amount of $61,736. The evidence also established that in 2006 D.S. Homes sold a house located on Tottenham Way (“the Tottenham Way house”), earning a gross profit of $51,699 but an “adjusted gross profit” of $31,129.[3] The father admitted that he had personally received $51,699 in proceeds from that sale. According to the father’s exhibit, D.S. Homes earned a net income of $15,665 in 2006. The father admitted that, in 2006, he had received a total of $111,635 in proceeds after taxes from the sale of the Harbor View Drive house and the Tottenham Way house.
Regarding the father’s income from his self-employment, the father’s 2007 CS^l “Child Support Obligation Income Statement/Affidavit” form indicates that he earns a monthly gross income of $2,500. However, the father’s testimony indicates that he believed that, in 2007, he would earn $30,000 annually or $2,500 per month, although he had not actually earned any income as of the March 20, 2007, hearing.
The evidence established that the father owns rental property. He introduced evidence indicating that he realizes a monthly loss of $37 from that property.
The evidence also established that the father owns five undeveloped residential lots that he purchased for $68,000 to $69,000 per lot. The father stated that, if he builds houses on those lots, he would list those houses with an asking price of between $400,000 and $500,000. However, he testified that he does not have adequate funds to develop those lots and that those lots are not producing any income. He also stated that his attempts to obtain additional financing for the development of those lots have been unsuccessful.
The juvenile court received evidence regarding the father’s monthly expenses. Those include, but are not limited to, $4,900 for the mortgage on the father’s primary residence, $685 for utilities, $400 for groceries, and $200 for costs of meals purchased at restaurants. The father testified that he currently incurs monthly expenses that total approximately $7,400.[4]
*519 According to the father, he pays his monthly expenses by using funds from proceeds from the sale of the Tottenham Way house, funds from D.S. Homes’ business account, and funds obtained from a home-equity loan on his primary residence. The father also stated that he has approximately $2,500 remaining in his bank account.
The father is 38 years old, is in good health, and has a college degree. When asked what consumes his time, he stated that he spends some of his time studying for a state examination to obtain a “lancer band” license,[5] as well as visiting the child at day care and watching television. Additionally, the father testified that a construction company had offered him a position in September 2006, with a starting salary of $21,000 per year.
“ ‘In reviewing a judgment of the trial court ..., where the trial court has made findings of fact based on oral testimony, we are governed by the ore tenus rule.’” Johnson v. Johnson, 840 So.2d 909, 911 (Ala.Civ.App.2002) (quoting Fowler v. Fowler, 773 So.2d 491, 493 (Ala.Civ. App.2000)). Furthermore,
‘““[w]hen ore tenus evidence is presented, a presumption of correctness exists as to the trial court’s findings on issues of fact; its judgment based on these findings of fact will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. J & M Bail Bonding Co. v. Hayes, 748 So.2d 198 (Ala.1999); Gaston v. Ames, 514 So.2d 877 (Ala.1987).” ’
“[Farmers Ins. Co. v. Price-Williams Assocs., Inc.,] 873 So.2d [252], 254 [ (Ala.Civ.App.2003) ](quoting City of Prattville v. Post, 831 So.2d 622, 627-28 (Ala.Civ.App.2002)).”
Cheek v. Dyess, 1 So.3d 1025, 1028 (Ala. Civ.App.2007).
Regarding voluntary unemployment, Rule 32(B)(5), Ala. R. Jud. Admin., provides, in pertinent part: “If the court finds that either parent is voluntarily unemployed or underemployed, it shall estimate the income’that parent would otherwise have and shall impute to that parent that income; the court shall calculate child support based on that parent’s imputed income.” Additionally, this court has previ *520 ously stated: “[T]he determination of whether a parent paying child support is voluntarily underemployed or unemployed is discretionary with the trial court. Mitchell v. Mitchell, 723 So.2d 1267 (Ala. Civ.App.1998).” Van Houten v. Van Houten, 895 So.2d 982, 986-87 (AIa.Civ. App.2004).
The evidence established that the father has sole ownership in D.S. Homes. Although the father indicated on his 2007 CS-41 form that he earns $2,500 monthly, or $30,000 annually, the father stated that he had actually earned no income as of the time of the March 20, 2007, hearing in this matter. The father testified that he is unable to develop property that he currently owns because he cannot obtain additional financing. Despite the foregoing, the father stated that he spends his time studying for an examination, visiting with the child, and watching television. Additionally, the evidence established that, although the father has significant monthly expenses totaling approximately $7,400, he rejected a job offer having a starting salary of $21,000 per year. Considering the foregoing, the juvenile court received evidence from which it could have concluded that the father had voluntarily eliminated his income. Although the juvenile court found the father to be voluntarily unemployed, despite the father’s claim to be self-employed, the effect of the father’s receiving no income equates to unemployment. Accordingly, we conclude that the juvenile court did not exceed its discretion in finding that the father was voluntarily unemployed.
Furthermore, “[t]his court, noting that the language of Rule 32 is mandatory, has held that where a trial court finds a parent to be voluntarily unemployed or underemployed, it is required to impute income to that parent. T.L.D. v. C.G., 849 So.2d 200, 206 (Ala.Civ.App.2002).” Van Houten, 895 So.2d at 986. Rule 32(B)(1) defines “income” as the “actual gross income of a parent, if the parent is employed to full capacity, or the actual groas income the parent has the ability to earn if the parent is unemployed or underemployed.” (Emphasis added.) Regarding income derived from self-employment, Rule 32(B)(3) defines “gross income” as “gross receipts minus ordinary and necessary expenses required to produce such income, as allowed by the Internal Revenue Service, with the exceptions noted in section (B)(3)(b).”[6]
Additionally, we have previously stated: “[I]n cases involving closely held corporations the trial court, when determining a parent’s ability to support his or her children, should consider the business’s net income, some of which is reinvested in the business, rather than the ‘owner[’]s draw.’ ” Puckett v. Summerford, 706 So.2d 1257, 1258 (Ala.Civ.App.l997)(citing Hall v. Hubbard, 697 So.2d 486, 488 (Ala. Civ.App.1997)). However, “[ejxpense reimbursements or in-kind payments received by a parent in the course of employment, self-employment, or operation of a business shall be counted as income if they are significant and reduce personal living expenses.” Rule 32(B)(4).
The evidence established that in 2006 the father had received a total of $111,635 in proceeds after taxes from the sale of the Harbor View Drive house and the Totten-ham Way house. However, a court does *521 not use the “owner’s draw” to determine a parent’s gross income from self-employment; rather, a court utilizes a business’s net income to make that determination. See Brown v. Brown, 960 So.2d 712, 716 (Ala.Civ.App.2006). According to the evidence the father introduced, D.S. Homes earned a net income of only $15,665 for 2006 and D.S. Homes had not earned any income in 2007.
Nevertheless, Rule 32(B)(4) provides that a court must consider in-kind payments received by a parent from that parent’s self-employment when those payments significantly reduce a parent’s living expenses. Although the evidence established that the father’s solely owned business had earned only $15,665 in net income in 2006 and had earned no income in 2007, the father’s testimony indicated that he had used D.S. Homes’ business account to pay a portion of his monthly expenses totaling approximately $7,400. We, therefore, conclude that the juvenile court did not err in imputing income in the amount of $7,414 per month to the father. See G.B. v. J.H., 915 So.2d 570, 576 (Ala.Civ. App.2005) (affirming a judgment imputing income to a noncustodial self-employed parent, when the evidence established that that parent’s corporation had made in-kind payments that greatly reduced his monthly expenses).
Next, the father argues that the juvenile court erred by denying him a credit for amounts he allegedly overpaid in pendente lite child support. Particularly, the father contends that he and the mother entered into a pendente lite agreement calculating child support based upon, in part, the $838 in monthly health-insurance premiums that the mother had incurred on the child’s behalf. He states that, because the cost of the child’s health insurance had decreased to $10 per month shortly after the entry of the pendente lite order, the juvenile court erred by failing to reduce his child-support obligation pursuant to Rule 32, Ala. R. Jud. Admin.
The mother and the father’s pendente lite agreement is not included in the record on appeal. Nevertheless, the juvenile court’s pendente lite order indicates the nature of the parties’ pendente lite agreement. It states, in pertinent part: “[Cjhild support was reached as a compromise, and neither party stipulates that said amount of child support is in compliance with Rule 32.”
Rule 32(A)(i) provides that a court may deviate from the child support guidelines if the parties enter into a “fair, written agreement.” Although the record does not affirmatively establish that the parties had agreed to deviate from the guidelines, the father failed to affirmatively demonstrate that that agreement was entered in accordance with Rule 32. “It is the duty of ... the appellant[ ] to demonstrate an error on the part of the trial court; this court will not presume such error on the part of the trial court. Marvin’s, Inc. v. Robertson, 608 So.2d 391, 393 (Ala.1992).” G.E.A. v. D.B.A., 920 So.2d 1110, 1114 (Ala.Civ.App.2005) (footnote omitted). Because this court will not presume error on the part of the juvenile court, and because the father has failed to affirmatively demonstrate such error, we affirm the juvenile court’s judgment insofar as it denied him a credit for child support.
Additionally, based on evidence presented by the mother indicating that the father did not pay any child support during the first two months of the child’s life and that the father had only paid $600 for the fourth and fifth months of the child’s life, we conclude that the juvenile court did not exceed its discretion by awarding the mother a child-support arrearage in the amount of $2,000. Cf. Volovecky v. Hoff *522 man, 903 So.2d 844, 850 (Ala.Civ.App.2004) (a determination to grant or deny an award of retroactive child support is subject to the abuse-of-discretion standard of review).
The father also argues that the juvenile court erred by denying him joint legal custody of the child.
“ ‘When this Court reviews a trial court’s child-custody determination that was based upon evidence presented ore tenus, we presume the trial court’s decision is correct: “ ‘A custody determination of the trial court entered upon oral testimony is accorded a presumption of correctness on appeal, and we will not reverse unless the evidence so fails to support the determination that it is plainly and palpably wrong....’” Ex parte Perkins, 646 So.2d 46, 47 (Ala. 1994), quoting Phillips v. Phillips, 622 So.2d 410, 412 (Ala.Civ.App.1993) (citations omitted). This presumption is based on the trial court’s unique position to directly observe the witnesses and to assess their demeanor and credibility. This opportunity to observe witnesses is especially important in child-custody cases. “In child custody cases especially, the perception of an attentive trial judge is of great importance.” Williams v. Williams, 402 So.2d 1029, 1032 (Ala. Civ.App.1981).’ ”
Brown, 960 So.2d at 717 (quoting Ex parte Fann, 810 So.2d 631, 633 (Ala.2001)).
Regarding an award of joint custody, § 30-3-152(a), Ala.Code 1975, provides, in pertinent part:
“(a) The court shall in every case consider joint custody but may award any form of custody which is determined to be in the best interest of the child. In determining whether joint custody is in the best interest of the child, the court shall consider the same factors considered in awarding sole legal and physical custody and all of the following factors:
“(1) The agreement or lack of agreement of the parents on joint custody.
“(2) The past and present ability of the parents to cooperate with each other and make decisions jointly.”
The father testified that he was seeking joint legal custody because he had concerns regarding the mother’s moral turpitude. Particularly, the father testified that he and the mother had had a disagreement regarding the mother’s desire to post pictures of the child along with pictures of the mother partially naked on her Web site. The mother stated that she posted pictures of herself modeling. She denied placing pictures of the child on the Internet, but she admitted having pictures of the child’s ultrasound on her Web site.
Also, the father testified that he desired to have the child christened but that the mother had refused. The mother denied that the father had asked her whether he could have the child christened. The father stated that the mother “[does not] believe in religion.” The mother denied that she is “against religion” and denied that she opposed the father’s accompanying the child to church. The mother testified that she was willing to share information regarding the child’s welfare.
In Ex parte Byars, 794 So.2d 345 (Ala. 2001), our supreme court affirmed this court’s judgment affirming the denial of an award of joint custody when both parties, whom the court found to be loving and caring, could not agree upon the school the child would attend. In the case now before us, the juvenile court found that the parties had difficulty communicating. Based on that evidence, the juvenile court could have concluded that the best interest of the child would be served if the mother made decisions regarding the welfare of *523 the child. Accordingly, we conclude that the juvenile court did not exceed its discretion by failing to award the father joint legal custody.
The father also argues that the juvenile court erred by failing to include a provision permitting him access to the child’s academic records and access to the child at her day care. The juvenile court’s judgment incorporates “standard parenting clauses” providing that the mother and the father have equal access to the child’s academic records and that they both have an opportunity to attend the child’s academic functions in accordance with the policies of the child’s school. The juvenile court’s judgment grants the father the relief that he seeks. Therefore, the juvenile court did not err on this ground.
Last, the father argues that the juvenile court erred by awarding the mother an attorney’s fee in the amount of $5,700 because, he contends, (1) the mother’s attorney rendered the mother legal representation gratuitously, (2) the mother had allegedly violated certain provisions of the pendente lite order, (3) the juvenile court failed to consider the father’s financial position, and (4) the juvenile court did not have the authority to award the mother an attorney’s fee.
Although the mother admitted that she is under no obligation to pay her attorney an attorney’s fee, the father fails to cite any legal authority for the proposition that a court cannot award an attorney’s fee when a party’s attorney renders legal services gratuitously. “It is well established that it is not the function of an appellate court to create, research, or argue an issue on behalf of the appellant.” Gonzalez v. Blue Cross/Blue Shield of Alabama, 760 So.2d 878, 883 (Ala.Civ.App.2000).
Furthermore, the father’s allegations that the mother violated certain provisions of the pendente lite order are merely allegations; the juvenile court did not make a finding that the mother had violated its order.
Regarding the father’s ability to pay, the juvenile court received evidence indicating that the father, who owns various assets that include real estate, sports cars, and an ultralight airplane, is in a financially superior position than the mother, who works at a child-care center earning $8.65 an hour. Considering the parties’ assets and income, we conclude that the juvenile court did not exceed its discretion in awarding the mother an attorney’s fee. See Goree v. Dark, 550 So.2d 436, 437-38 (Ala.Civ.App. 1989) (affirming the judgment awarding an attorney’s fee to the wife when the husband’s financial position was superior to that of the wife).
Finally, regarding the juvenile court’s authority to award an attorney’s fee, this court has affirmed judgments of juvenile courts awarding a party an attorney’s fee. See B.B. v. F.P., 984 So.2d 418, 423 (Ala. Civ.App.2007); and B.R.L. v. State ex rel. K.H.S., 664 So.2d 908, 913 (Ala.Civ.App. 1995). We do not conclude that the juvenile court does not have discretion to fashion an award of an attorney’s fee.
We deny the mother’s and the father’s requests for an attorney’s fee on appeal.
AFFIRMED.
PITTMAN, J., concurs.
THOMPSON, P.J., and THOMAS, J., concur in the result, without writing.
BRYAN, J., concurs in part and dissents in part, with writing, which MOORE, J., joins.

. Because the father's name is included in the name of his business, we have abbreviated the name of the father’s business to maintain the father’s anonymity.

. The father’s exhibit introduced into evidence indicates that D.S. Homes realized a loss after deducting $30,000 for funds the father had personally invested in the construction of the house, $1,000 for a lot deposit, $1,800 for taxes, and $44,400 for "interest carrying charges,” totaling $77,200.

. The father’s exhibit indicates that D.S. Homes earned an "adjusted gross profit” after deducting the following expenses: $12,170 for a down payment, $1,000 for payment to another home builder, $500 for lawn-care maintenance, and $6,900 for "interest carrying charges,” totaling $20,570.

. On examination by the mother, the father testified that, in response to the mother's interrogatories, he had listed his monthly expenses as totaling $6,605. He also testified that that total represented his monthly expenses at the time of trial. Furthermore, the mother introduced an exhibit that listed the father’s monthly expenses according to the father’s testimony by deposition. Those expenses total $6,595. Included in that list of expenses is the father's child-support obligation of $800 per month. However, the father stated the following regarding the mother’s examination of his monthly expenses:
“[The mother’s attorney:] ... [I]n your articulation of expenses you haven’t included the $800.00 that you pay [the mother] in child support have you?
"[The father:] I don’t know if I did that or not. I guess I didn’t.
"[The mother’s attorney:] That would add another $9,600.00 to the amount needed to *519 meet your monthly expenses on an annual basis wouldn’t it?
"[The father:] I’m surprised that I left it off but, of course, it should be on there.”
Later in the proceeding, the mother’s attorney asked:
"[The mother's attorney:] Well, you’re seeking to have child support be based on income to you of $2,500.00 a month and we have already clearly established by your own testimony at deposition and under oath at interrogatories that your monthly expenses are $7,000.00 a month?
"[The father:] Well, that is my expenses. Not my income.”
Nevertheless, the father, in his brief submitted on appeal states:
“It is clear that [the father] carries a substantial debt load and living expense in the approximate amount of $6,600.00 per month, as evidenced by his answers to [the mother’s] interrogatories ... and [the mother’s] Exhibit No. 4_At the time of the final hearing, he was also paying child support at the rate of $800.00 per month, for a total yearly expenditure of $89,000.00.”
(Appellant’s brief at 21.) Because the father states in his brief that he had a monthly expense of $800 in child support in addition to the expenses totaling approximately $6,600 as listed on the mother’s exhibit, we use the total of those two amounts — i.e., $7,400 — as the amount of his monthly expenses.

. We note that the reporter’s transcript states that the father is seeking to obtain a "lancer band” license. However, we believe that this is an error in transcription and that references to a “lancer band” may actually refer to a "land surveyor.”

. Rule 32(B)(3)(b), Ala. R. Jud. Admin., provides:
" 'Ordinary and necessary expenses' does not include amounts allowable by the Internal Revenue Sendee for the accelerated component of depreciation expenses, investment tax credits, or any other business expenses determined by the court to be inappropriate for determining gross income for purposes of calculating child support.”