THOMAS, Judge,
dissenting.
I dissent from the main opinion’s reversal of the juvenile court’s judgment and its decision to remand the cause to the juvenile court because I believe that there was clear and convincing evidence indicating that the father had abandoned the children. Thus, I believe that the judgment of the juvenile court should be affirmed.
After hearing disputed testimony, the juvenile court concluded that the father had abandoned the children. Section 26-18-7(c), Ala.Code 1975, provides:
“In any case where the parents have abandoned a child and such abandonment continues for a period of four months next preceding the filing of the petition, such facts shall constitute a re-buttable presumption that the parents are unable or unwilling to act as parents. Nothing in this subsection is intended to prevent the filing of a petition in an abandonment case prior to the end of the four-month period.”
Section 26-18-3(1), Ala.Code 1975, defines “abandonment” as:
“A voluntary and intentional relinquishment of the custody of a child by a parent, or a withholding from the child, without good cause or excuse, by the parent, of his presence, care, love, protection, maintenance or the opportunity for the display of filial affection, or the failure to claim the rights of a parent, or failure to perform the duties of a parent.”
It is true that our supreme court has stated that “[t]he definition of abandonment in § 26-18-3(1) ... recognizes excuse as a basis on which to avoid abandonment.” Ex parte F.P., 857 So.2d 125, 138 (Ala.2003). However, in J.L. v. State Department of Human Resources, 961 So.2d 839, 849 (Ala.Civ.App.2007), this court affirmed a trial court’s finding of abandonment, basing its holding on and having considered “all the circumstances of the case, including the father’s actions that led to his separation from the child ....”; see also H.H. v. Baldwin County Dep’t of Human Res., 989 So.2d 1094, 1103 (Ala. Civ.App.2008)(“In J.L., the court held that a parent, whose voluntary actions had led to his incarceration and subsequent inability to perform his parental duties and to maintain contact with the child, had abandoned the child for the purposes of § 26-18-3(1).”).
*120 Although the father argues and the main opinion agrees that the juvenile court did not consider the father’s excuse based upon comments by the juvenile court, I believe that the main opinion evaluates the juvenile court’s comments regarding the father’s excuse out of context. A fair reading of the record suggests that the juvenile court considered and rejected the father’s excuse. The comments relied upon by the main opinion were made by the juvenile court during a contentious exchange, peppered with objections of counsel, preventing the witness from testifying regarding the contents of a letter sent to DHR by the father. Those comments were made while the juvenile court was trying to facilitate the continued testimony of the witness and relatively early in the proceedings. The juvenile court heard testimony from seven additional witnesses, as well as additional testimony from the father, and admitted several exhibits after making those comments. Regardless, the juvenile court’s judgment terminating the father’s parental rights specifically stated that the juvenile court had, in fact, considered and rejected the father’s tendered excuse. The juvenile court’s March 5, 2008, judgment states:
“The Father’s voluntary and intentional absence from this country for a period of approximately nine (9) months resulted in the Father’s withholding from the children], without good cause or excuse, of his presence, care, love, protection, maintenance, [and] Father’s withholding of the opportunity for the display of filial affection by and between the Father and the child, and the Father’s failure to perform the duties of a parent.”
(Emphasis added.) This court will not presume error on the part of the juvenile court. D.C.S. v. L.B., 4 So.3d 513, 521 (Ala.Civ.App.2008); see generally Dean v. Dean, 998 So.2d 1060, 1066 (Ala.Civ.App. 2008); Pickett v. Pickett, 792 So.2d 1124, 1128 (Ala.Civ.App.2001). The juvenile court was entitled to make a finding of abandonment based on all the circumstances surrounding the father’s separation from the children. J.L. v. State Dep’t of Human Res., 961 So.2d at 849.
The record reveals that DHR had been previously involved with the family and had gained custody of the children in 2001 when the father served 40 days in jail for a driving-under-the-influence conviction. Although the children were ultimately returned to the custody of the mother and the father in 2003, the father and DHR had an understanding that the mother was not to be left alone with the children due to her inability to parent the children because of her cognitive deficiencies.
The father has continuously lived and worked in the United States since 1994, when he illegally immigrated to the country. However, after 12 years of living and working in the United States, the father suddenly decided to leave the country to obtain a visa. Upon questioning by counsel for DHR, regarding why the father had pursued obtaining his visa in Guatemala, rather than from within the United States, the father testified that he had returned to Guatemala on July 31, 2006, because he had scheduled an appointment with an immigration authority. Although he testified that he believed the process would take between 20 days and 2 months, the father did not return to the United States until May 11, 2007. When he returned, the father had a visa that, he testified, was valid for two years. He testified that he would have to wait one year to apply for permanent-resident status. Although the father returned on May 11, 2007, counsel for the father did not appear in the case until November 14, 2007, and the father did not file an answer until December 3, 2007.
*121 The father testified that, subsequent to his return to the United States, he was employed and able to care for the children. He did admit that he was driving without a license. The father testified that he believed that the mother was capable of parenting the children by herself, although he testified that he understood that DHR did not believe that to be the case.
The father testified that he had arranged to leave the children with friends in Fort Payne during the time that he had planned to be in Guatemala. However, approximately a week after the father left, the mother arranged to have the children stay with her and a friend who planned to stay with the mother. The father testified that he had maintained telephone contact with the mother and had been aware that, soon after the mother returned home with the children, the friend had left. Nonetheless, the father took no action to make certain that the mother was not caring for the children alone. Although the main opinion argues in a footnote that the father tried to speed up the visa process and that the father requested that DHR maintain custody of the children, those actions by the father had no bearing on the mother’s caring for the children alone, despite the father’s understanding with DHR that the mother would not care for the children alone and despite the father’s voluntary and intentional absence from the country. In fact, the father received money from the mother from her Supplemental Security Income (“SSI”) disability check, although the father testified that he knew that the family was going without his regular income and that food stamps and the mother’s SSI disability check were “almost” enough for the mother to support herself and the children. Ultimately, DHR received a report indicating that the mother was wandering the neighborhood crying and requesting that someone assist her in caring for the children.
Emma Ford, the DHR caseworker in this case, testified that the father had called her from Guatemala in response to a message left by an investigator. She testified that she informed the father that he needed to return to the United States in three months or DHR would move to terminate his parental rights. The father transmitted to DHR a letter, which Ford believed someone else had written, indicating that the father would not be available for approximately five months. In that letter, the father stated that he was aware of a hearing on December 21, 2006, to determine custody of his children.[25] However, the mother’s former attorney testified that, at the February 2007 hearing, at which the mother consented to the adoption of the children, the mother had not expressed reservations and did not request that the court wait for the father before making its decision.
Ford testified that her primary concern was that the father had left the children with the mother and had returned to Guatemala and that this might occur again. Further, Ford testified that the father’s decision to leave the children in the custody of the mother without adequate supervision was an additional concern. Ford did admit that, in general, DHR would offer services in the present situation, now that the father had returned, and that she had filed the termination petition, based on abandonment, at the direction of her supervisor. She testified, however, that DHR’s position was that the father had abandoned the children by voluntarily and intentionally relinquishing custody of the *122 children and that DHR had been trying to achieve permanency for the children. Although the main opinion argues that Ford’s concern that the father may again return to Guatemala and leave the children in the care of the mother is “speculative at best,” 12 So.3d at 114 n. 20, Ford’s testimony was admitted without objection. Also, the father’s own testimony establishes that his visa is valid for only two years and that he may not be granted permanent-resident status.
The children’s guardian ad litem also expressed the same concern as DHR, stating in her report that the father’s decision to leave the children with the mother while in Guatemala was “so seriously flawed, it raises questions concerning his ability to provide appropriate care for the children.”
Although the father testified that he had maintained telephone contact with the children, J.N. testified that, during the time J.N. and M.N. had spent with the mother and her family, J.N. and M.N. had been led to believe that the father’s contact with the family was “minimal” and that the father usually missed scheduled telephone calls. J.N. further testified that he had understood that the father “was in agreement with [J.N. and M.N.] taking legal custody and adopting” the children. J.N. testified that the father’s conduct made him believe that the father had abandoned his the children. J.N.’s testimony was admitted without objection.
This court has stated:
“ ‘On appeal from ore tenus proceedings in a termination-of-parental-rights case, this court presumes that the juvenile court’s factual findings regarding viable alternatives are correct. See J.C. v. State Dep’t of Human Res., 986 So.2d 1172, 1183 (Ala.Civ.App.2007). However, because of the serious nature of a judgment severing a familial relationship, see L.M. v. D.D.F., 840 So.2d 171, 179 (Ala.Civ.App.2002), this court conducts a “careful search of the record” to determine whether such findings are supported by clear and convincing evidence. In re Moore, 470 So.2d 1269, 1270 (Ala.Civ.App.1985). See also Columbus v. State Dep’t of Human Res., 523 So.2d 419, 421 (Ala.Civ.App.1987); and Santoslcy v. Kramer, 455 U.S. 745 (1982). “Clear and convincing evidence” is “ ‘[ejvidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion.’ ” L.M. v. D.D.F., 840 So.2d at 179, citing in turn Ala.Code 1975, § 6 — 11— 20(b)(4).’ ”
T.V. v. B.S., 7 So.3d 346, 352 (Ala.Civ.App. 2008) (quoting J.B. v. Cleburne County Dep’t of Human Res., 991 So.2d 273, 282 (Ala.Civ.App.2008)).
I believe that there was clear and convincing evidence of record supporting the juvenile court’s decision to terminate the father’s parental rights. I believe the juvenile court considered the father’s excuse, as well as all the circumstances regarding the father’s abandonment of the children, but ultimately found that the father had failed to rebut the presumption that he was unable or unwilling to act as a parent and that he had voluntarily abandoned his children. § 26-18-7(a), Ala.Code 1975; J.L. v. State Dep’t of Hum. Res., 961 So.2d at 849. Therefore, I dissent.
Furthermore, because I would affirm the juvenile court’s judgment for the reasons expressed in this dissent, I would grant rehearing. Thus, I also dissent from the overruling of the application for rehearing.

. The record reflects that the letter was written by the father on December 18, 2006; the record does not indicate when DHR received the father's letter, although it had the letter in early January 2007, when Ford faxed it to the mother’s former attorney.