McDonald, j.
| gThis appeal questions whether the Louisiana State Uniform Construction Code Council (appellant in this appeal) has the authority to hold an administrative hearing over a third-party provider, pursuant to the Louisiana State Uniform Construction Code Law, LSA-R.S. 40:1730.21, et seq. The district court issued a permanent injunction prohibiting the Council from hearing the matter, agreeing with third-party providers, Ms. Karen Dillard and Mr. Delvin Portier, (appellees in this appeal) that the law requires administrative hearings to be in accordance with LSA-R.S. 49:992, et seq., and by the Division of Administrative Law. For the following reasons, we reverse the judgment of the district court and vacate the injunction.
FACTS
After the destruction of and damage to buildings and structures in Louisiana from Hurricanes Katrina and Rita in 2005, the legislature enacted LSA-R.S. 40:1730.21, et seq., to provide for a State Uniform Construction Code by Acts 2005, 1st Extraordinary Session, Number 12, effective November 29, 2005. The intent of the statute, as published, stated that “[t]he public policy of Louisiana is to maintain reasonable standards of construction in buildings and other structures in the state consistent with the public health, safety, and welfare of its citizens.” LSA-R.S. 40:1730.21 A. The legislature further clarified its intent, and the statute provides in pertinent part:
D. To further clarify the intent of the legislature, this Part continues to apply to a person who may act under authority of the Department of Public Safety and Corrections and that the allocation of inspection duties among local officials is not dictated by this Part but remains a matter for the local authority.
E. To secure these purposes, the Louisiana State Uniform Construction Code Council shall certify a person performing building codes enforcement including *625 building officials, plans reviewers, and inspectors.
|sThe act originally provided that LSA-R.S. 40:1730.21 through 40:1730.39, the State Uniform Construction Code, was to be effective on January 1, 2007. House Concurrent Resolution No. 36 of the 2006 Second Extraordinary Session was passed urging and requesting that the governor, by Executive Order, suspend the statewide effective date of the Louisiana State Uniform Construction Code until July 1, 2007. According to the Resolution, as of December 15, 2006, local governments throughout the state did not have adequate funding or personnel to effectively enforce the provisions of the statute by the January 1, 2007 effective date.
In order to perform their statutorily required function, Lafourche and Terre-bonne parishes contracted with the South Central Regional Planning and Development Commission, a governmental entity, to provide a building code enforcement officer for the two parishes. Mr. Michael Wich was appointed by the commission as building code enforcement officer for both parishes. Ms. Dillard and Mr. Portier are third-party providers[1] who work in the two parishes. Mr. Wich filed numerous complaints with the Council against Ms. Dillard and Mr. Portier regarding their work as third-party providers.
In September 2009, the Council’s administrator sent a letter to Ms. Dillard and Mr. Portier, respectively informing them that the Council had received a formal complaint from Mr. Wich and that Ms. Dillard and Mr. Portier may have violated specified provisions of the Louisiana Administrative Code. These provisions were enacted by the Council to provide published rules to enforce the statute. In accordance with these rules, the Council instituted an “informal hearing” for the purpose of resolving the complaints against the appellees. The hearing was conducted by the Code Enforcement Advisory, a subcommittee |4composed of members of the Council. Both appellees, as well as Mr. Wich, the complainant, participated. At the conclusion, the committee addressed letters to Ms. Dillard and Mr. Portier advising that it was the recommendation of the committee that action, specified in the letters, be taken against them. Neither Ms. Dillard nor Mr. Portier agreed to the action proposed by the committee.
Thereafter, on December 16, 2009, letters were addressed to Ms. Dillard and Mr. Portier advising that the Council voted at its monthly meeting on December 9, 2009, to accept the recommendation of the committee with regard to their registration as third-party providers. Ms. Dillard’s third-party provider registration was partially suspended for a period of six months, during which time she was prohibited from performing any plan reviews or inspections on commercial projects. It was also proposed that Ms. Dillard complete 40 hours of training in commercial plan review and inspections and provide proof of attendance. The letter advised that Ms. Dillard’s registration would be renewed upon completion of these conditions. Mr. Portier’s third-party provider registration was suspended for a period of six months, during which time he was prohibited from performing any plan reviews or inspections on residential and commercial projects. Mr. Portier was advised that the registration would be considered for *626 reinstatement at the end of the six-month suspension.
Ms. Dillard and Mr. Portier both refused to accept the action of the Council, resulting in the Council filing formal charges against each of them on January 25, 2010. The hearing of the charges against Mr. Portier was set for Wednesday, February 24, 2010, and the hearing regarding the charges against Ms. Dillard was set for Thursday, February 25, 2010. On February 22, 2010, a Petition for In-junctive Relief was filed jointly by Ms. Dillard and Mr. Portier, which included a request for declaratory judgment on questions regarding the authority of the Council. A temporary restraining order (TRO) and a preliminary injunction were | ^requested to prevent the Council from proceeding with the scheduled hearings until a trial and a decision by the district court on the permanent injunction.
The district court granted the TRO and set a hearing on the preliminary injunction for March 10, 2010. At the March 10th hearing the parties agreed that the hearing would also serve as the trial on the permanent injunction. After receiving evidence and hearing testimony and argument, the court took the matter under advisement. On June 3, 2010, the district court issued written reasons and ruled that the hearing on the charges against Ms. Dillard and Mr. Portier was to be conducted by the Division of Administrative Law and granted the request for injunction. The district court did not address the other issues raised by the plaintiffs.
The Council has appealed, raising two assignments of error: (1) the trial court erred in issuing a permanent injunction prohibiting the Louisiana State Uniform Construction Code Council from presiding over an administrative hearing regarding third-party providers; (2) the trial court erred in ruling that any administrative hearings held pursuant to administrative actions of the Louisiana State Uniform Construction Council be referred to the Division of Administrative Law. The plaintiffs answered the appeal, raising several issues on which the district court failed to rule. This appeal will only address the issue decided by the district court, whether the statute creating the Council gave it the right to hold adjudicatory hearings.
LAW AND ANALYSIS
The district court found that the Council exceeded its authority by attempting to conduct an adjudicatory hearing. The court believed that hearings were to be conducted in accordance with LSA-R.S. 49:992, by the Division of Administrative Law. The Council argued that it is authorized to adjudicate issues regarding its registrants, including third-party providers, because, among other | (¡reasons, it is a “professional and occupational licensing board” and thus exempt from the provisions of LSA-R.S. 49:992, as noted in LSA-R.S. 49:992(D)(5), which states, “State professional and occupational licensing boards shall be exempt from the provisions of this Chapter.” The district court specifically found that the Council should not be considered a professional or occupational licensing board. We agree that the Council is not a typical licensing and regulatory board. However, this finding does not lead us to conclude that the Council is not authorized to hold adjudicatory hearings. An examination of the statute creating the Council causes us to find that the Council is empowered to adjudicate matters relating to third-party providers.
Generally, Title 37 provides for the regulation of professions and occupations. Limitations on disciplinary proceedings by professional or occupational boards or commissions in general are provided in *627 LSA-R.S. 37:21, followed by specific statutes applying to an extensive number of professions or occupations from Chapter 2, Accountants, through Chapter 58, Allied Health Professionals. These chapters typically begin with a policy statement and definitions, dictate how the board or commission is appointed, and delineate their power and authority. Requirements for licensure or certification are provided, as well as disciplinary procedures for failure to follow the law or rules regulating the applicable group. The regulating body promulgates rules applicable to the body that it is charged with regulating in accordance with the Administrative Procedure Act.
The law pertaining to the Louisiana State Uniform Construction Code Council is provided in Title 40, designated for statutes dealing with Public Health and Safety. These statutes provide for a myriad of organizations whose functions affect the public health or safety, including the Department of Public Safety, with provisions for various boards under its auspices, as well as the State Police, and the |7statutes authorizing and empowering local housing authorities. Dealing as they do with many differing organizations, the statutes follow varying procedures regarding the functioning of the group. We do not believe that the registrants regulated by the Council are a “profession or occupation” as is contemplated by LSA-R.S. 49:992(D)(5). However, we find that in creating the Council, the legislature intended to and gave the Council the authority to discipline its registrants.
We reach this conclusion from the wording of the statute, and irrespective of the fact that typically occupational licensing and regulatory boards are empowered to pass and enforce rules relative to their participants. We recognize that the legislature is presumed to enact each statute with deliberation and full knowledge of all existing laws on the same subject. Thus, legislative language will be interpreted on the assumption the legislature was aware of existing statutes, well established rules of statutory construction and with knowledge of the effects of their acts and a purpose in view. Hays v. La. State Board of Elementary and Secondary Education, 09-1386, pg. 8 (La. 1 Cir. 6/11/10), 39 So.3d 818, 823. The legislature, in passing LSA-R.S. 40:1730.21, was primarily concerned with “maintain[ing] reasonable standards of construction in buildings and other structures in the state consistent with the public health, safety, and welfare of its citizens.” It designated the Louisiana State Uniform Construction Code Council as the body ultimately responsible for “securing] these purposes,” LSA-R.S. 40:1730.21(E), although the “allocation of inspection duties among local officials is not dictated by this Part but remains a matter for the local authority.” LSA-R.S. 40:1730.21(D) and (E).
The statute specifically addresses the enforcement of building codes by municipalities and parishes in LSA-R.S. 40:1730.23, which provides:
|SA. Notwithstanding any other law to the contrary relating to the authority of local governments to enforce construction codes, all municipalities and parishes in this state shall enforce only the construction codes provided for in this Part. All municipalities and parishes shall use building code enforcement officers or certified third-party providers contracted by the municipality, parish, or regional planning commission to act in the capacity of a building code enforcement officer to enforce the provisions of this Part. Enforcement procedures by building code enforcement officers or third-party providers acting in the capacity of a *628 building code enforcement officer shall include examination or review of plans, drawings, or specifications; the conducting of inspections; and the issuance, denial, or revocation of permits. A building code enforcement officer, third-party provider, or third-party provider contracted by a jurisdiction as provided for in R.S. 40:1730.24(A) shall not conduct plan review or inspections on a commercial or residential structure if such officer or provider owns any interest in the legal entity that constructed such commercial or residential structure or receives any compensation from the legal entity other than the fees that are charged for plan review or inspections. Nothing in this Subsection shall be construed to prevent a commercial or residential contractor or homeowner from using a third-party provider as provided for in R.S. 40:1730.24(B). Nothing in this Subsection shall be construed to prevent a commercial contractor or commercial owner from using the office of state fire marshal as a third-party provider as provided for in R.S. 40:1730.24(B) on commercial structures in any parish within the state with a population of less than forty thousand and whose boundaries lie completely north of the one hundred ten mile per hour wind line, as shown in the American Society of Civil Engineers (ASCE-7) basic wind speeds map published in the latest edition of the International Building Code.
B. Nothing in this Part shall conflict with the Federal Department of Housing and Urban Development’s regulations regarding manufactured housing construction or the provisions of R.S. 51:912.21 et seq., as it relates to manufactured housing installation. Further, it is the intent of the legislature than any service, renovation, repair, or warranty work performed on a manufactured home shall be handled under the appropriate federal standards governing manufactured housing construction or state standards governing installation, and all such work be under the jurisdiction of the Louisiana Manufactured Housing Commission. Additionally, the exemption for manufactured housing provided for in this Subsection shall extend to and include driveways, steps, decks, or other similar accessory structures or work, but shall not include any additional living area or other type of heated and cooled space outside of the original footprint of the manufactured home.
C. In connection with the construction of any building, structure, or other improvement to immovable property, neither the performance of any enforcement procedure nor any provision of a building code shall constitute or be construed as a warranty or guarantee by a governmental enforcement agency as to durability or fitness, or as a | nwarranty or guarantee by a governmental enforcement official or a third-party provider who contracts with a municipality or parish as provided for in R.S. 40:1730.24(A), that said building, structure, or other improvement to immovable property or any materials, equipment, or method or type of construction used therein is or will be free from defects, will perform in a particular manner, is fit for a particular purpose, or will last in any particular way. In the enforcement of any provision of a construction code provided for in this Part, or any regulations governed by R.S. 33:4771 et seq., the performance or non-performance of any procedure by a governmental enforcement agency, contract employee or official shall be subject to the provisions of R.S. 9:2798.1.
*629 D. (1) Notwithstanding any provision of Title 33 of the Louisiana Revised Statutes of 1950 or any other law to the contrary, no municipality or parish shall require that residential building plans for one and two family dwellings be prepared or stamped by a certified architect or engineer if the dwelling falls within the prescriptive standards of the latest edition of the International Residential Code or its referenced amendments as provided for in R.S. 40:1730.28.
(2) The provisions of this Section shall be effective for both the duration, of the emergency wind and flood mitigation provisions as provided for in R.S. 40:1730.27 and after this Part becomes effective statewide as provided for in R.S. 40:1730.28(33)....
[Emphasis added.]
Third-party providers are addressed in LSA-R.S. 40:1730.24:
A. Municipalities and parishes may establish agreements with other governmental entities of the state or certified third-party providers to issue permits and enforce the state uniform construction code in order to provide the services required by this Part.... The council may assist in arranging for municipalities, parishes, or certified third-party providers to provide the services required by this Part to other municipalities or parishes if a written request from the governing body of the municipality or parish is submitted to the council.
B. Commercial and residential contractors and homeowners who are excepted from the contractor licensing law under R.S. 37:2170 may establish agreements with certified third-party providers to conduct plans review and inspections and enforce the state uniform construction code. On and after January 1, 2007, a third-party provider shall meet the requirements imposed by the council for certificates of registration; however, beginning January 1, 2008, upon application and fulfillment of all other requirements necessary to obtain a certificate of registration, a third-party provider who is a Louisiana licensed architect or engineer shall be granted a certificate of registration without certification by a recognized code organization. Once the council meets for the first time, certified third-party providers shall notify the council of their intention to do |10business within the state, and the council shall maintain a listing of all certified third-party providers.
[Emphasis added.]
It is clear that the legislature intended the Council to hold hearings consistent with its duty to enforce the uniform standards set by the Council, as authorized in LSA-R.S. 40:1730.34. The appellees concede that the Council does have power to adjudicate matters concerning building code enforcement officers, but contend that this authority does not extend to third-party providers. The fact that “third-party providers” are not specifically mentioned, leading appellees to conclude they were not covered, does not suggest to us that they were outside of the Council’s enforcement duties. The law considers the functions, duties, and qualifications of these reviewers and inspectors to be the same.[2] We find nothing in the statute to cause us to conclude that third-party pro *630 viders are exempt from the authority of the Council.
Finally, in considering appellees’ argument that failure to include excludes, we note that LSA-R.S. 40:1730.34(B) states that the “council and its members shall be subject to the Open Meetings Law, the Public Records Law, and the Code of Governmental Ethics.” The Council is not subject to the Administrative Procedure Act or Administrative Law. This statute, however, allows the Council to promulgate regulations under the Administrative Procedure Act for enforcement purposes if the Council chooses to do so, and it has.
Appellees concede that references to the Administrative Procedure Act can be read as giving the Council authority to promulgate rules to conduct proceedings; however, they argue that this authority cannot be extended beyond any authority statutorily conferred. We agree that the Council cannot create by rule authority not intended by the legislature. However, we do not agree with the appellees’ Ininterpretation of references to the Administrative Procedure Act as requiring the proceedings to be conducted in accordance with administrative procedures established in the Division of Administrative Law. We note that all public bodies promulgate rules in accordance with the Administrative Procedure Act. Government bodies responsible for licensing, certifying, etc. promulgate rules detailing the procedure that is to be followed in disciplinary hearings, as was done by the council in the Louisiana Administrative Code.
We do not address appellees’ arguments that adjudication by the Council is a violation of due process, because the district court did not address the constitutionality of the statute.
CONCLUSION
Accordingly, the injunction issued by the district court in this matter is vacated, the decision of the district court is reversed, and we hold that LSA-R.S. 40:1730.21 et seq. authorizes the Louisiana State Uniform Construction Code Council to hold adjudicatory hearings in accordance with its duly promulgated rules regarding third-party providers, Ms. Karen Dillard and Mr. Delvin Portier. Costs of this appeal are assessed equally to Ms. Karen Dillard and Mr. Delvin Portier.
INJUNCTION VACATED, JUDGMENT REVERSED AND RENDERED.
WHIPPLE, J., concurs and assigns reasons.
McCLENDON, J., concurs for reasons assigned by Judge WHIPPLE.

. The statute does not provide a definition for "third-party provider”; however, in the discussion following this recitation of facts, the status and duties of third-party providers will be addressed.

. Effective January 1, 2008, upon application and fulfillment of all other requirements necessary to obtain a certificate of registration, a third-party provider who is a Louisiana licensed architect, or engineer shall be granted a certificate of registration without certification by a recognized code organization. LSA-R.S. 40:1730.21(B).