On Rehearing Ex Mero Motu

THOMPSON, Presiding Judge.
This court’s opinion of June 24, 2011, is withdrawn, and the following substituted therefor.
This is the second time D.C.S. (“the father”) and L.B. (“the mother”) have been before this court. In D.C.S. v. L.B., 4 So.3d 513 (Ala.Civ.App.2008), the mother sought a determination of the father’s paternity, custody of the child, and an award of child support. The parties stipulated to the father’s paternity of the child, and the juvenile court entered a pendente lite order that, among other things, established the father’s paternity. In its April 13, 2007, final judgment, the juvenile court, among other things, awarded the mother custody of the child, determined that the father was voluntarily underemployed and calculated child support based on that determination, and awarded *956 the mother a child-support arrearage. The father appealed, and this court affirmed; in pertinent part, this court agreed that the juvenile court had not erred in imputing income to the father for the purpose of calculating child support. D.C.S. v. L.B., supra.
On June 25, 2009, the father filed in the juvenile court a petition to modify his child-support obligation. In that petition, the father also asserted a claim seeking to have the mother held in contempt for various alleged violations of the “Standard Parenting Clauses” set forth in the April 13, 2007, judgment. With regard to both claims, the father sought an award of an attorney fee and costs from the mother.
The mother answered and denied the material allegations of the father’s petition, and she then filed a counterclaim alleging that the father was in contempt for his failure to pay child support.
After receiving ore tenus evidence, the juvenile court entered a judgment in which it, among other things, denied the father’s claim seeking a modification of child support. In reaching that ruling, the juvenile court again found the father to be voluntarily underemployed. The juvenile court awarded the mother a child-support ar-rearage. It also denied the father’s contempt claims and his claims seeking an award of an attorney fee and costs. The father filed a postjudgment motion, which the juvenile court denied. The father timely appealed to this court.
In his brief on appeal, the father argues that the juvenile court erred in refusing to modify his child-support obligation. He also asserts arguments that the juvenile court erred in failing to find the mother in contempt and in failing to award him an attorney fee and costs.
On original submission, on June 24, 2011, this court issued a plurality opinion, in which Judge Moore concurred and Judge Bryan concurred specially, concluding that the juvenile court lacked continuing jurisdiction to consider the father’s modification claims and that, based on that lack of continuing jurisdiction, the juvenile court also lacked jurisdiction over the enforcement claims. Judge Thomas wrote to concur in the result. The author of this opinion concurred with that part of the main opinion determining that the juvenile court lacked continuing jurisdiction over the modification claims but dissented from that part of the main opinion concluding that the juvenile court lacked the authority to consider the parties’ contempt claims; Judge Pittman joined that writing. Thus, a majority of the court in the opinion released on original submission, in accordance with earlier precedent, held that the juvenile court lacked jurisdiction to consider the father’s modification claims. However, the court was split with regard to the issue whether the juvenile court had jurisdiction over the enforcement claims, and no majority opinion resulted with regard to that issue. With regard to the issue whether the juvenile court retained jurisdiction over the contempt claims, this court’s opinion was a plurality opinion.
“A plurality opinion is an opinion ‘agreed to by less than the majority as to the reasoning of the decision, but is agreed to by a majority as to the result,’ Black’s Law Dictionary 1092 (6th ed.1990); an opinion that lacks the sufficient number of judges’ votes to constitute a majority opinion. Therefore, ‘[t]he precedential value of the reasoning in a plurality opinion is questionable at best.’ Ex parte Discount Foods, Inc., 789 So.2d 842, 845 (Ala.2001); see also Ex parte Achenbach, 783 So.2d 4 (Ala.2000).”
Ex parte State (In re L.B.S. v. L.M.S.), 826 So.2d 178, 185 n. 4 (Ala.Civ.App.2002).
*957 The Administrative Office of Courts, relying on and quoting solely from that part of the plurality opinion in which only two members of the court concurred, sent a letter to the trial courts of this state stating that this court had held that a juvenile court lacked continuing jurisdiction to enforce its own judgments. The Presiding Judge of the 13th Judicial Circuit, the State’s Attorney General, the State Department of Human Resources, and the Administrative Office of Courts filed a joint motion as amici curiae asking this court to place the matter on rehearing, ex mero motu, to consider the purported impact their interpretation of the original opinion might have on the operation of the courts and the State’s ability to qualify for certain federal funding. This court placed the appeal on rehearing, ex mero motu, and received oral arguments. This opinion replaces the opinion issued on original submission.
On original submission, neither of the parties to this appeal addressed the issue of the jurisdiction of the juvenile court or this court to consider his or her claims.[1] However, jurisdictional issues are of such importance that this court may take notice of them ex mero motu. Wallace v. Tee Jays Mfg. Co., 689 So.2d 210, 211 (Ala.Civ.App.1997). “ ‘[T]his Court is duty bound to notice ex mero motu the absence of subject-matter jurisdiction.’” Baldwin Cnty. v. Bay Minette, 854 So.2d 42, 45 (Ala.2003) (quoting Stamps v. Jefferson Cnty. Bd. of Educ., 642 So.2d 941, 945 n. 2 (Ala.1994)). “ ‘The question of jurisdiction is always fundamental, and if there is an absence of jurisdiction, over either the person, or the subject matter, a court has no power to act, and jurisdiction over the subject matter cannot be created by waiver or consent.’ ” Poff v. General Motors Corp., 705 So.2d 442, 443 (Ala.Civ.App.1997) (quoting B.F. Goodrich Co. v. Parker, 282 Ala. 151, 155, 209 So.2d 647, 650 (1967)).
Under former § 12-15-32, Ala.Code 1975, once a juvenile court properly exercised jurisdiction over a matter involving a child, the juvenile court maintained continuing jurisdiction over the child. However, our legislature altered the continuing jurisdiction of the juvenile courts when it enacted the new Alabama Juvenile Justice Act (“the current AJJA”), § 12-15-101 et seq., Ala.Code 1975, which became effective on January 1, 2009. See Act. No. 2008-277, Ala. Acts 2008. Section 12-15-117 of the current AJJA, which revised and renumbered former § 12-15-32, provides that a juvenile court retains continuing jurisdiction only when a child has been determined to be dependent, delinquent, or in need of supervision. Under the current AJJA, a juvenile court does not retain jurisdiction over custody disputes between parents that arise pursuant to claims seeking a modification of a judgment establishing a child’s paternity. This court has explained:
“To the extent that a juvenile court has properly made an initial custody award, or has properly modified a custody judgment under the statutory framework set forth in the main opinion in W.B.G.M. [v. P.S.T., 999 So.2d 971 (Ala.Civ.App.2008) ], those judgments remain valid and enforceable notwithstanding the enactment of [the current AJJA]. Any such judgments would, however, be prospectively modifiable in Alabama only by the circuit courts, which are constitutionally constituted as ‘trial court[s] of *958 general jurisdiction.’ Ala. Const.1901, § 139(a) (Off.Recomp.).”
Ex parte T.C., 68 So.3d 627, 631 (Ala.Civ.App.2010); see also Ex parte L.N.K., 64 So.3d 656, 658 (Ala.Civ.App.2010) (“Thus, this court has held that a juvenile court no longer has continuing jurisdiction over a child based solely on its having made a prior paternity determination.”); K.C. v. R.L.P., 67 So.3d 94, 96 (Ala.Civ.App.2011) (“Because the child has never been found dependent, and because the present [modification] action was filed after January 1, 2009, it could only have been properly filed in the circuit court.”); R.T. v. B.N.H., 66 So.3d 807 (Ala.Civ.App.2011) (the juvenile court lacked jurisdiction over an action involving claims to modify visitation and for grandparent visitation).
In this case, the juvenile court, in the 2007 action, determined the father’s paternity, established custody, and fashioned a child-support award. The record contains no indication that the juvenile court found the child to be “dependent, delinquent, or in need of supervision” so as to continue the jurisdiction of the juvenile court under the current AJJA. § 12-15-117(a). In accordance with § 12-15-117(a) and recent caselaw, we must hold that the juvenile court was without jurisdiction to consider the father’s claims seeking to modify the child-support provision of its earlier judgment; the modification claims were required to have been brought in the circuit court. See Ex parte T.C., supra; Ex parte L.N.K., supra. Therefore, the juvenile court’s judgment as to these claims was void. See L.P. v. A.W., 78 So.3d 1003, 1006 (Ala.Civ.App.2011). Because a void judgment will not support an appeal, we dismiss the father’s appeal in part, with instructions to the juvenile court to dismiss the father’s petition insofar as it relates to his modification claims. See Searle v. Vinson, 42 So.3d 767, 772 (Ala.Civ.App.2010).
We conclude, however, that the juvenile court retained jurisdiction over the contempt claims asserted by the parties. In their contempt claims, each party sought to require the other party to comply with various portions of the April 13, 2007, judgment. Under § 12-15-110, Ala. Code 1975, the juvenile court retains the power to enforce its judgments through contempt determinations. The juvenile court also retains jurisdiction to enforce its orders that require monetary payments. § 12-15-117(c) and (d), Ala.Code 1975.[2] Although under the current AJJA, the juvenile court did not maintain jurisdiction over the child, i.e., the juvenile court lacked continuing jurisdiction to modify child support or child custody, the juvenile court maintained jurisdiction to enforce its own judgment. § 12-15-117(c); § 12-15-110. Accordingly, the juvenile court had jurisdiction to consider the parties’ contempt claims.
We note that the jurisdictional specifications of the current AJJA, which require litigation of claims related to the same set of facts in different courts, are *959 neither expedient nor the best use of the resources of the parties and the judiciary. However, matters of expediency and convenience are relevant to the issue of venue, not the issue of jurisdiction. Ex parte Bad Toys Holdings, Inc., 958 So.2d 852, 856 n. 3 (Ala.2006) (discussing the difference between venue and jurisdiction); Ex parte City of Haleyville, 827 So.2d 778, 781-82 (Ala.2002) (same). This court may not determine jurisdictional issues on the bases of expediency or policy. “It is the duty of the legislature to enact the laws and the duty of the courts to apply those laws as written.” Ex parte T.C., 63 So.3d at 632 (Thompson, P.J., concurring in part and concurring in the result). See also Honeycutt v. Employees’ Ret. Sys. of Alabama, 431 So.2d 961, 964 (Ala.1983) (“[I]t is not the function of the court to usurp the role of the legislature and to amend statutes under the guise of construction.”). The resolution of the difficulties arising out of the provisions in the current AJJA concerning the juvenile court’s retention of jurisdiction is a matter to be addressed by the legislature. During oral argument on rehearing ex mero motu in this court, it was brought to this court’s attention that a bill is to be introduced to the legislature to remedy the jurisdictional problems created in the current version of the AJJA. For the purposes of this opinion, however, we must conclude that, under the current AJJA, the juvenile court had jurisdiction to consider only those claims pertaining to the enforcement of its 2007 judgment.
The contempt claims asserted by the father and the mother seek to enforce aspects of the juvenile court’s April 13, 2007, judgment pertaining to child support and whether the parties had complied with a set of “Standard Parenting Clauses” attached as an exhibit to the April 13, 2007, judgment. The father has not appealed that portion of the August 19, 2010, judgment finding him in contempt for his failure to pay child support as ordered. Rather, on appeal, he argues that the juvenile court erred in failing to find the mother in contempt. Accordingly, this opinion sets forth the facts pertinent to that issue.
In his brief on appeal, the father focuses his arguments on assertions that the juvenile court erred in failing to find that the mother violated clauses 6,16, and 17 of the Standard Parenting Clauses. Those clauses provide, in pertinent part:
“6. Both parents shall encourage the minor child to love, respect and honor the other parent. Neither of them shall alienate nor attempt to alienate or diminish the affection of the minor child for the other parent, or disparage or allow others to disparage the other parent to or in the presence of the minor child....
“16. The Court expects children to be insulated to the fullest extent possible from the conflict between their parents. They should not be made confidants of a parent, and should be encouraged to love, honor and respect both parents and their respective families. Parents should act accordingly in the presence of the child.
“17. The Court expects both parents to have the opportunity to attend a child’s medical and/or dental appointments, as well as a child’s school and extracurricular activities, including parent-teacher conferences, school events, sporting events, etc. A parent scheduling any such appointment or receiving notice of such activities should give the same notice to the other parent as soon as received. Parents shall conduct themselves in a civil and appropriate manner at all such appointments and activities. The child should be allowed contact with both parents at any such *960 activity, regardless of whose custodial/visitation period it is.”
The record indicates that shortly after the April 2007 judgment was entered, an incident occurred at the day-care facility attended by the child and at which the mother is employed. The father testified that he was visiting the child on the playground, with the permission of the facility’s director, and that the mother came out of the building in which she worked and began yelling at him. The father testified that the mother cursed and threatened to revoke his permission to visit the child. The mother denied cursing and yelling at the father on that occasion, but a worker at the day-care facility verified much of the substance of the father’s allegations.
The father’s niece testified regarding an incident in which she, the father, the father’s girlfriend, and the child went to a skating rink together approximately eight to nine months before the hearing in this matter. The niece testified that the mother came to the skating rink and, in the presence of the child, criticized the father to the father’s girlfriend.
The father also presented evidence about an incident involving the father’s attendance at the child’s 2008 field trip to a “pumpkin patch.” The father testified that the mother stated that if he went, she would not allow the child to attend the field trip. It is undisputed that the mother drove the child to the field trip rather than allowing the child to ride on a bus in which the child’s classmates were traveling. The mother explained that the field trip occurred on her day off, that the father had attended the child’s last field trip, and that they had agreed to alternate attendance at field trips.
The father submitted into evidence an audio recording of a conversation he had with the mother concerning that trip and his request that the mother do more to shield the child from their conflicts.[3] In that conversation, the mother expressed a desire to attend the field trip alone with the child, as the father had in an earlier field trip. In response to the father’s requests that the child not be informed of the details of their conflict, the mother responded that she was not going to lie to the child. During the hearing, the mother explained that she did not intend to tell the child the specifics of any disagreements but that she thought that the child should know, if the child asked, that the mother and father did not always agree.
The father testified that he had not been informed in advance that the child was no longer seeing her previous counselor and was now receiving counseling from a new counselor, Dr. Kelly Fischer. The record indicates that the father has been informed in advance of all the child’s activities and appointments except for an appointment with Dr. Fischer. The record contains no evidence indicating when the child began treatment with Dr. Fischer, when the father learned about the child’s treatment with Dr. Fischer, or how he learned that the child was seeing Dr. Fischer. The record indicates that the father met with Dr. Fischer a few weeks before the hearing in this matter. In an electronic-mail communication to the mother, the father stated that he had informed Dr. Fischer of what he termed the mother’s “bad behavior.”
We note that a December 2009 letter from the father to the mother was admitted into evidence. In that letter, the father set forth a list of offenses he alleged *961 the mother had committed since the two met, including his allegation that the mother had tricked him, resulting in her pregnancy. The letter explained that he had discussed the matter with a number of friends or acquaintances. The father insisted in his testimony that he was trying to resolve the parties’ differences amicably and that the purpose of the letter was to “help the relationship” between the parties.
The father sought to have the mother cited for civil contempt, which is defined as a “willful, continuing failure or refusal ... to comply with a court’s lawful writ, subpoena, process, order, rule, or command that by its nature is still capable of being complied with.” Rule 70A(a)(2)(D), Ala. R. Civ. P. “To hold a party in [civil] contempt under [Rule 70A(a)(2)(D) ], Ala. R. Civ. P., the trial court must find that the party willfully failed or refused to comply with a court order.” T.L.D. v. C.G., 849 So.2d 200, 205 (Ala.Civ.App.2002). This court has explained that
“whether a party is in contempt of court is a determination committed to the sound discretion of the trial court, and, absent an abuse of that discretion or unless the judgment of the trial court is unsupported by the evidence so as to be plainly and palpably wrong, this court will affirm.”
Stack v. Stack, 646 So.2d 51, 56 (Ala.Civ.App.1994).
The father contends that the juvenile court properly determined that the mother had violated clause 17 of the Standard Parenting Clauses but that it erred in failing to find her in contempt for that violation. The juvenile court determined the mother had violated clause 17 by failing to act in a civil manner on at least one occasion. It is not clear to which conduct that finding relates, but it appears to be regarding the incidents at the playground and the skating rink. The evidence supports the juvenile court’s finding that the mother’s conduct during those incidents violated clause 17 of the Standard Parenting Clauses. However, in order to find that the mother was in contempt, the juvenile court would also have had to conclude that the violation was “willful,” as described in Rule 70A. The juvenile court’s judgment indicates that it determined that both parents had contributed to the hostility between them, and it recommended that each seek counseling in order to better co-parent in the future. Thus, although it found that the mother had violated the civility provision of the Standard Parenting Clauses, the juvenile court could have also determined that the mother’s conduct was not willful so as to warrant a contempt finding. We cannot say that the father has demonstrated that such a conclusion is not supported by the evidence. Further, we note that the juvenile court, in its August 19, 2010, judgment, warned the mother against future violations of the civility provision of the Standard Parenting Clauses, indicating that contempt sanctions would be imposed if the juvenile court determined them to be warranted in the future.
The father also argues that the juvenile court erred in failing to find the mother in contempt with regard to her alleged failure to insulate the child from conflict between the mother and the father and the dispute surrounding the pumpkin-patch field trip. As indicated in the quote from the August 19, 2010, judgment, the juvenile court determined that the mother was not in contempt with regard to clauses 6 and 16 of the Standard Parenting Clauses. Those determinations were reached after the juvenile court had received ore tenus evidence over the course of two days.
“ ‘[T]he trial court has the advantage of observing the witnesses’ demeanor and has *962 a superior opportunity to assess their credibility, [and, therefore, an appellate court] cannot alter the trial court’s judgment unless it is so unsupported by the evidence as to be clearly and palpably wrong.’ ” Ex parte Fann, 810 So.2d 631, 636 (Ala.2001) (quoting Ex parte D.W.W., 717 So.2d 793, 795 (Ala.1998)). The trier of fact, and not this court, has the duty of resolving conflicts in the evidence. Ethridge v. Wright, 688 So.2d 818, 820 (Ala.Civ.App.1996).
“ ‘[The appellate court is not] allowed to reweigh the evidence in this case. This [issue] ... turns on the trial court’s perception of the evidence. The trial court is in the better position to evaluate the credibility of the witnesses ... and the trial court is in the better position to consider all of the evidence, as well as the many inferences that may be drawn from that evidence....’ ”
Ex parte Patronas, 693 So.2d 473, 475 (Ala.1997) (quoting Ex parte Bryowsky, 676 So.2d 1322, 1326 (Ala.1996)).
In this case, the evidence was disputed regarding whether the mother had violated various clauses of the Standard Parenting Clauses. Although the father, in his brief to this court, insists that various facts pertaining to the alleged violations were undisputed, we cannot agree. The mother testified that she and the father had reached an agreement that each could attend a field trip without the other, and the evidence indicates that the father attended the pumpkin-patch field trip anyway. The juvenile court determined that the mother had not yet violated the Standard Parenting Clauses by informing the child of conflict between the parents. Further, the evidence could support a determination that the father’s testimony with regard to the contempt claims was not credible. The father insisted at the hearing that he had tried to resolve the parties’ disputes amicably. However, the letter admitted into evidence, together with other testimony, clearly demonstrates that the father’s tone toward the mother has been far from conciliatory. Given the evidence in the record on appeal, we cannot say that the father has demonstrated that the juvenile court exceeded its discretion in determining that the mother had not violated certain clauses of the Standard Parenting Clauses.
The father last argues that the juvenile court erred in failing to require the mother to pay his attorney fees and costs. In support of his brief argument on this issue, the father cites only Cole v. Cole, 507 So.2d 1333, 1335 (Ala.Civ.App.1987), in which this court stated that a trial court may award an attorney fee in a contempt action if the opposing party is found to be in contempt. In this case, the juvenile court did not find the mother in contempt, and this court has not reversed that determination. Accordingly, we must reject the argument asserted in the father’s brief on appeal concerning the issue of an attorney fee.
ON REHEARING EX MERO MOTU; OPINION OF JUNE 24, 2011, WITHDRAWN; OPINION SUBSTITUTED; DISMISSED IN PART; AFFIRMED IN PART; AND REMANDED.
PITTMAN and THOMAS, JJ., concur.
MOORE, J., concurs in the rationale in part and concurs in the result, with writing.
BRYAN, J., concurs in part and dissents in part, with writing.

. The mother did not favor this court with a brief on appeal. During oral argument on rehearing, the father’s attorney argued that this court should hold that the juvenile court properly exercised jurisdiction over all of his claims.

. Section 12-15-117 provides, in pertinent part:
“(c) In any case over which the juvenile court has jurisdiction, the juvenile court shall retain jurisdiction over an individual of any age for the enforcement of any prior orders of the juvenile court requiring the payment of fines, court costs, restitution, or other money ordered by the juvenile court until paid in full.
“(d) For purposes of enforcing any order of the juvenile court requiring the payment of fines, court costs, restitution, or other money ordered by the juvenile court, the remedies with regard to punishment for contempt, including incarceration in jail of individuals 18 years of age or older, shall be available to the juvenile court.”

. In his testimony, the father admitted that he often recorded conversations with the mother when he wanted to discuss an issue pertaining to the child, and he acknowledged that he did not inform the mother that she was being recorded.