MOORE, Judge.
S.J.S. (“the father”) appeals from a judgment of the Russell Juvenile Court (“the juvenile court”) in a custody dispute with H.M. (“the mother”).

Procedural History

On February 11, 2009, the mother filed a petition in the juvenile court to modify custody of the parties’ child; the petition was assigned case no. JU-09-56.01. The mother alleged that the custody order that was in effect, which had been entered by the Superior Court of Muscogee County, Georgia, provided that the parties were to alternate custody of the child weekly, with each party having physical custody of the child four days one week and three days the following week.[1] She alleged that the father had kept the child from her since November 2008 and had refused to allow her to see the child. She requested that the juvenile court award her primary physical custody of the child and award the father weekend visitation.
On February 12, 2009, the father filed a petition requesting, among other things, that the juvenile court award him penden-te lite custody of the child, issue an order finding the mother in contempt for failing to pay child support as previously ordered, and modify custody by awarding him legal and physical custody of the child. The father alleged that, since July 4, 2008, the child had resided with him, that the mother had not paid her court-ordered child support, and that the mother had not visited the child since November 2008. He further alleged:
“[The] Mother is currently in an abusive relationship with her boyfriend. [The] Mother has been evicted from her last two residences. [The] Mother has no motor vehicle. [The] Mother has *824 verbally threatened [the] Father. [The] Mother has threatened to take the minor child and leave the Phenix City, Columbus area. [The] Mother has lost custody of [the] Mother’s first child. [The] Mother is mentally ill. [The] Mother is pregnant again.”
The father asserted that he was “fearful for [the] child’s safety” unless the court restrained the mother from removing the child from his custody or from removing the child from the area in which the father was living at that time.
On May 28, 2009, the juvenile court entered a judgment denying the mother’s petition for a change of custody and denying the father’s petition for contempt and for a change of custody. The juvenile court further provided that the previous custody judgment was to remain in effect, “specificallyU that physical custody of the child shall alternate weekly, with each party having physical custody of said child for four days of one week and for three days of the following week”; that the mother was to continue to contribute $40 per week to a savings account for the child; that the father’s name was to be added to that account; and that the money in the savings account should be used to pay the child’s private-school tuition. The juvenile court also found that the mother was not in arrears on her child-support obligation.
On September 15, 2009, the mother filed a document with the juvenile court alleging that the father had kept the child from her in violation of the juvenile court’s May 2009 judgment. On October 13, 2009, the father filed a response to the mother’s allegations, stating that the mother’s boyfriend had possibly abused the child and that the mother had failed to add the father’s name to the child’s savings account as ordered in the May 2009 judgment. On November 24, 2009, the juvenile court entered a judgment that, among other things, provided that neither party was to have greater custodial rights than the other, provided that neither party was to pay child support to the other, ordered the mother to facilitate the addition of the father’s name to the child’s savings account, ordered that the mother’s boyfriend have no unsupervised contact with the child, and set forth a schedule of alternating custodial periods.
On January 11, 2010, the mother filed a motion for contempt alleging that the father had withdrawn funds from the savings account in violation of the juvenile court’s judgments. On March 3, 2010, the mother filed another motion to hold the father in contempt for his alleged failure to allow the mother to exercise her custodial rights since on or about December 25, 2009. On March 31, 2010, the juvenile court entered a judgment finding the father in contempt.
On July 7, 2011, the mother filed a letter with the juvenile court, requesting primary physical custody of the child and permission to relocate with the child to Florida. On July 12, 2011, the father filed a response, requesting that the mother not be allowed to relocate to Florida and that he be awarded sole legal and physical custody of the child “until the [mother] can show financial stability to properly care for the minor child and a suitable environment for visitation approved by the Court.”[2] On *825 September 28, 2011, the juvenile court entered a judgment awarding the mother primary physical custody of the child, awarding the father visitation, ordering the father to pay child support, and granting the mother permission to relocate to Florida.
On November 3, 2011, the father filed a motion for relief from all the judgments and orders entered by the juvenile court after January 1, 2009, the effective date of the current Alabama Juvenile Justice Act (“the AJJA”), § 12-15-101 et seq., Ala. Code 1975, because, he asserted, the juvenile court had lacked subject-matter jurisdiction to enter those judgments and orders. On December 21, 2011, the juvenile court entered a judgment stating, in pertinent part:
“This cause comes before the Court on December 5, 2011, for a hearing on [the father’s] Motion for Relief from Judgment or Order. Present at this hearing are: Hon. Jo Anna Chancellor Parker, Guardian ad litem for the minor child; [the] father ... and his attorney Hon. F. Patrick Loftin. The Guardian ad Litem waived the presence of the minor child. The mother was not present.
“The Court, having considered the pleadings, evidence, testimony and arguments of all parties; IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED:
“1. That the record does not reflect if the mother ... was served and had notice to be present for the hearing.
“2. The Court finds that the motion filed by the father is correct on its face as to the matter of law regarding subject matter jurisdiction, but in the past the Court has ordered the [mother] to pay the costs associated with a Domestic Relations case and proceeded to hear the matter as Judge Michael Bellamy would be assigned to the case regardless of its designation of a Juvenile Court number or a Domestic Relations number.
“3. Therefore, the Petitioner [i.e., the father] in- the previous case number designation of JU-09-56.08 is hereby ordered to pay the costs associated with the filing fees in Domestic Relations cases and the Juvenile case number be incorporated with the new Domestic Relations case number.
“4. The mother ... was the Petitioner in [case number JU-09-56.07] and is hereby ordered to pay the additional cost for this matter to be docketed as a DR.
“5. The prior order of custody and child support shall be amended to reflect the aforementioned and incorporated into a new Domestic Relations case with a proper Domestic Relations case number.”
On January 4, 2012, the father filed a petition for a writ of mandamus in this court; this court has elected to treat the petition as an appeal.

Discussion

On appeal, the father argues that, pursuant to the AJJA, the juvenile court lacked subject-matter jurisdiction to enter any judgments and orders in any actions filed by the parties after January 1, 2009, the effective date of the AJJA, because those actions were not dependency actions but, instead, were custody disputes between two parents. See R.T. v. 66 So.3d 807, 811 (Ala.Civ.App.2011) (“‘The *826 clear intent of the Legislature [in enacting the ... AJJA] was to provide that the juvenile courts of this state should no longer be deciding custody disputes except insofar as their resolution is directly incidental to core juvenile-court jurisdiction.’ Ex parte T.C., 63 So.3d 627, 630-31 (Ala.Civ.App.2010); see also Ala.Code 1975, § 12-15-114(a) (‘A dependency action shall not include a custody dispute between parents.’).”).
We agree with the father that the juvenile court lacked subject-matter jurisdiction to enter all the orders and judgments in any actions that were filed by the parties after January 1, 2009. Thus, all the orders and judgments entered after the mother filed her initial custody-modification petition on February 11, 2009, in case no. JU-09-56.01, were entered by the juvenile court without subject-matter jurisdiction. The juvenile court recognized that it lacked subject-matter jurisdiction, but, after recognizing the absence of subject-matter jurisdiction, it attempted to remedy that defect by ordering the father, the petitioner in case no. JU-09-56.08, “to pay the costs associated with the filing fees in Domestic Relations cases” and by directing that “the Juvenile case number be incorporated with the new Domestic Relations case number.” The juvenile court attempted to retroactively change the juvenile-court action, which was assigned case no. JU-09-56.08, into a domestic-relations action because, it said, the same judge who had presided over the juvenile-court action would have also presided over the action had it been filed in the circuit court.
In T.B. v. T.H., 30 So.3d 429, 433 (Ala.Civ.App.2009), this court reasoned:
“In this case ... the judge attempted to exercise his powers as a circuit-court judge to decide a custody case in a juvenile-court proceeding. However, ... the judge had no jurisdiction to adjudicate custody of the child in the juvenile court once he determined that the case was not a dependency case. Although cloaked with the authority to act as a circuit-court judge, that authority did not enable the judge to enlarge the jurisdiction of the juvenile court and rule on matters outside that court’s jurisdiction. Therefore, the final judgment entered in case number JU-07-420.01, as well as any pendente lite order entered by the juvenile court affecting the custody of the child and all the proceedings after the court elected to treat this case as a custody case and not a dependency case, are void.”
Similarly, in the present case, the fact that the juvenile-court judge also presided over domestic-court matters “did not enable the judge to enlarge the jurisdiction of the juvenile court and rule on matters outside that court’s jurisdiction.” Id. Thus, we conclude that all orders and judgments entered by the juvenile court after the mother filed her custody-modification petition on February 11, 2009, are void. R.T., 66 So.3d 807 at 812.[3] “A void judgment will not support an appeal.” M.H. v. Jer. W., 51 So.3d 334, 335 (Ala.Civ.App.2010). We, therefore, dismiss the father’s appeal, albeit with instructions to the juvenile court to vacate all the judg *827 ments and orders entered by it after February 11, 2009. Id.[4]
APPEAL DISMISSED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.

. The judgment entered- by the Superior Court of Muscogee County, Georgia, designated the father as the primary physical custodian of the child.

. On August 4, 2011, the juvenile court entered an order stating, in pertinent part:
“This matter comes before the Court on this date for a hearing in .07 for modification of custody and first call in .08 for custody....
“The court having explained the nature of the proceeding as well as the rights of the minor [child], it does proceed to receive testimony ore tenus relative to said minor [child]. The Court note[s] that the father oppose[d] the petition filed by the petitioner *825 [i.e., the mother] in .07 and entered an answer to the petition requesting custody which will be listed as .08...."

. Any enforcement or modification proceedings with regard to the Georgia custody judgment must be commenced in the circuit court. Although we recognize that the juvenile court has jurisdiction to enforce its own judgments, D.C.S. v. L.B., 84 So.3d 954, 958 (Ala.Civ.App.2011), in the present case all the judgments entered by the juvenile court regarding the custody of the child are void, so there are no valid juvenile-court judgments to enforce,

. Because these cases were filed in a court lacking subject-matter jurisdiction, we need not discuss whether the requirements set forth in the Uniform Child Custody Jurisdiction and Enforcement Act, § 30-3B-101 et seq., Ala.Code 1975, were complied with in this case.