DONALDSON, Judge.
F.W. appeals from a judgment of the Marshall Juvenile Court (“the juvenile court”) awarding T.M. and K.M. (“the foster parents”) custody of M.S. (“the child”).

Facts and Procedural History

A.S. (“the mother”) gave birth to the child at Huntsville Hospital on October 22, 2011. Because of the mother’s erratic behavior and her refusal to feed the child following birth, the hospital staff removed the child from the mother’s hospital room *952 and contacted the Department of Human Resources. Around the time of the child’s birth, the child’s father, J.H. (“the father”), had been detained in the Marshall County jail for allegedly telephoning a bomb threat into his place of employment. On October 24, 2011, the Marshall County Department of Human Resources (“DHR”) filed a petition alleging that the child was dependent and requesting that the child be removed from the custody of the mother. The juvenile court granted DHR’s request for removal and placed the child in the legal custody of DHR. On October 25, 2011, DHR placed the child into the physical custody of the foster parents. Following a shelter-care hearing on October 26, 2011, the juvenile court determined that the child would remain in the legal custody of DHR. The juvenile court conducted an adjudicatory hearing on November 29, 2011, and, on November 30, 2011, the juvenile court entered an order adjudicating the child to be dependent. The juvenile court awarded legal custody of the child to DHR, and the child remained in the physical custody of the foster parents.
Following the removal of the child from the mother, DHR sought to locate a suitable relative placement for the child. As the juvenile court noted in its final judgment rendered in this case in January 2013, “[a] number of different relative placements, too lengthy to list here, were determined unsuitable by DHR, for a variety of reasons, including unwillingness to accept the child and/or prior indicated reports of child abuse.” The record shows that in January 2012 F.W. contacted DHR with a request that she and her husband, C.W., be considered for relative placement of the child. F.W. is the sister of the child’s maternal grandmother, thus making F.W. and C.W. the child’s maternal great-aunt and great-uncle. Shortly thereafter, DHR approved F.W. and C.W. as a suitable relative placement for the child. The record indicates that DHR planned to transfer the child from the foster parents’ home on February 8, 2012. On February 1, 2012, the foster parents filed a petition to intervene in the dependency case. In the petition, the foster parents requested that the juvenile court enter emergency relief to prevent DHR from removing the child from the foster parents’ physical custody and “that the Court enter such orders concerning temporary and permanent custody of the minor child as may be in the best interest of the minor child, including, if the Court deems appropriate, temporary and permanent custody [with the foster parents].” The record reveals that the foster parents based their petition on the allegation that F.W. and C.W. were unable to care for the child due to concerns with F.W.’s and C.W.’s health and based on F.W.’s and C.W.’s close association with and location to family members and others who engaged in illegal or illicit activity. The record indicates that, at a hearing on February 7, 2012, DHR opposed the foster parents’ petition to intervene based on their lack of standing and that DHR opposed the foster parents’ motion for an emergency order preventing the removal of the child from their physical custody. On February 7, 2012, F.W. and C.W. filed a motion to intervene, in which they also requested permanent custody of the child. The record reveals that the juvenile court granted their petition without opposition from any party. On February 21, 2012, the foster parents amended their petition to request termination of the mother’s parental rights. The record indicates that the foster parents also filed a separate petition for termination of the mother’s parental rights.[1] On March 15, 2012, the *953 juvenile court entered an order granting the foster parents’ request to intervene.
On or about April 1, 2012, DHR removed the child from the foster parents’ home and placed the child in the physical custody of F.W. and C.W. The juvenile court held a hearing on April 4, 2012, on the foster parents’ petition for emergency relief. The juvenile court determined from the evidence presented at the hearing that the conditions surrounding F.W. and C.W. were troublesome, but did not rise to a level requiring the removal of the child from F.W. and C.W.’s home.
Ore tenus testimony was taken at the trial of the case on December 4, 2012, and January 2, 2013. In its final judgment, entered on January 4, 2013, the juvenile court noted that the issue that had been tried was narrow:
“The sole issue for the Court’s determination was: (1) pursuant to the Alabama Juvenile Justice Act (2008), as amended, should custody of the child be awarded to [F.W. and C.W.], as a relative placement; or should custody of the child be awarded to the [the foster parents]. The child was found to be dependent by prior Order of the Court, and the continuing dependency of the child was stipulated by all parties present and not at issue.”
The juvenile court made the following findings of fact, among others:
“The Court took evidence ore tenus. After long and careful deliberation, the Court finds by clear and convincing evidence, material and relevant in nature, the following:
[[Image here]]
“On April 5, 2012, this Court entered an Order which provided in part [that DHR was to place the child with F.W. and C.W., but that J.D.W., M.D.W., P.B., L.H., C.H., and L.D. were to have no contact with the child and were not to be on or around the property of F.W. and C.W.’s home while the child was present].
“[F.W. and C.W.] are both fifty-five (55) years of age. [C.W.] has recently suffered from three (3) separate heart attacks, and has a surgically implanted defibrillator to regulate his cardiac condition. [C.W.] draws Social Security disability in the amount of approximately $1,800.00 to $1,900.00 per month related to his heart condition. ... [F.W.] suffers from fibromyalgia and arthritis. She previously applied for Social Security disability, but her disability claim was denied. [F.W.] has not been employed in recent years. [F.W. and C.W.] smoke cigarettes.
“[C.W.]’s mother, [M.W.], owns approximately ten (10) acres of land located [in Marshall County] ... (‘the ... family property’). [F.W. and C.W.] reside in a two-bedroom home located upon the ... family property (‘[F.W. and C.W.]’s home’). [M.W.] also lives on the ... family property, in an adjacent home. Also located upon the ... family property are the following; (1) a trailer currently occupied by [J.D.WJ; (2) a *954 camper which is owned by [P.C.B.], one of [J.D.WJ’s paramours; (3) a woodworking shop used by [C.W.]; and (4) a barn.
“[F.W. and C.W.] have five adult children: (1) daughter, [L.W.]; (2) son, [J.D.W.]; (3) daughter, [M.D.W.]; (4) daughter, [S.W.]; and (5) [Ch.WJ. Of these, [L.W.] lived within [F.W. and C.WJ’s home at the time this Petition was filed, but had moved out of state at the time of hearing. Throughout the pendency of this litigation, [F.W. and C.W.’s] son, [J.D.W.], has lived intermittently in the trailer adjacent to [F.W. and C.W.’s] home and located on the ... family property. [F.W. and C.W.’s] daughter, [M.D.W.], currently resides just down the street, within walking distance of the ... family property. The testimony is unclear where [S.W.] resides. [Ch.W.] lives in Guntersville, Alabama. From the testimony, it appears that [Ch.W.] maintains little contact with the rest of the ... family.
“[J.D.W.] was convicted in April, 2012, of felony theft of property in the second degree. Additionally, [J.D.W.] grew marijuana plants on the ... family property with equipment provided by, or at least purchased by [F.W.]. Furthermore, [J.D.W.] has been the subject of numerous other arrests and criminal investigations, including alleged domestic violence related to [P.C.B.], who at the time of hearing, was also living on the ... family property on an intermittent basis. At some time in late 2012 or early 2013, the Marshall County Sheriffs Department recovered a stolen Ford pickup truck from the barn located on the ... family property. The guardian ad litem’s testimony in this matter indicates that [J.D.W.] was likely involved in the theft of this vehicle, or at least its concealment on the ... family property; however, the current status of any criminal charge related to this incident is unclear.
“The Court is convinced that [J.D.W.] is habitually involved in nefarious and/or criminal activity, including drug related activity, theft and domestic violence.
“[M.D.W.] was convicted in April, 2011, of felony fraudulent use of a credit card. [S.W.] has, in the past, been employed as a ‘stripper’....
“In addition to [F.W. and C.W.’s] adult children, [C.W.’s] sister, [D.W.M.], recently lived upon the ... family property for approximately two (2) to three (3) weeks. [D.W.M.] was recently arrested and charged with manufacturing crystal methamphetamine in DeKalb County, Alabama. [D.W.M.] lived upon the ... family property immediately following her making bond and being released from the DeKalb County Jail, pending the above-referenced charges. [D.W.M.] testified at Court that she could not pass a drug test on the day of hearing.
“Since the time of this Court’s April 5, 2012 Order, which provided that [J.D.W.] and [P.C.B.] were not to be on or around the premises of [F.W. and C.W.’s] home, both have moved into the trailer and/or camper on the ... family property, and were currently residing there at the time of the last hearing in this matter. Furthermore, other persons who were excluded from the premises under the terms of this Court’s April 5, 2012, [order] have routinely parked in front of [M.W.’s] house on the ... family property, and then walked to [F.W. and C.W.’s] home and conversed with [F.W. and C.W.] from the surrounding yard area.
“On the other hand the [the foster parents] are both approximately thirty-nine (39) years old. [K.M. and T.M. are *955 employed]. The [foster parents] have been married for over three (3) years, and own their home.... [T.M.] has one (1) son by a previous marriage, who is over the age of eighteen (18). The [foster parents] have no known health problems, nor any criminal history. The [foster parents] were previously investigated and approved as licensed foster parents by DHR.”
(Footnotes omitted.) The record indicates that DHR had submitted a report to the juvenile court in December 2012, which stated that, based on a home study conducted on F.W. and C.W.’s residence, F.W. and C.W. were a suitable relative placement. The report further indicated that DHR strongly opposed the foster parents’ petition for permanent custody of the child.
In its judgment, the juvenile court made the following conclusions of law:
“1. The child remains a dependent child, as that term is defined under [§] 12 — 15—102(3)[, Ala.Code 1975];
“2. [F.W. and C.W.] are ‘relatives’ of the child, for purposes of establishing priority pursuant to [§] 12-15-314(a)(3)(c)[, Ala.Code 1975];
“3. [F.W. and C.W.] are not ‘fit’ and ‘able’ relatives of the child, under [§] 12-15-314(a)(3)(c)[, Ala.Code 1975], and therefore not entitled to priority for custody and/or placement, for the following reasons[:]
“a. [F.W. and C.W.] have an unstable home and housing situation, due to the fact that they live in a home owned by [M.W.], with no lease or other formal arrangement, and therefore, could be removed from said home at the whim of [M.W.];
“b. [F.W. and C.W.] reside in extremely close proximity to, and maintain extremely close contact with, their son [J.D.W.], who is a recently convicted felon, and who[] has been habitually involved in constant criminal and nefarious activity, including domestic violence, involvement with illicit drugs, and theft of property;
“c. That other children and relatives of [F.W. and C.W.], besides [J.D.W.], live, stay intermittently, or visit frequently upon the ... family property, including [D.W.M.]; [M.D.W.] and [SWJ;
“d. That the other children or relatives of [F.W. and C.W.], besides [J.D.W.], mentioned within paragraph (3)(c), above, include convicted felons, persons charged with manufacturing crystal methamphetamine; and persons employed as ‘strippers’;
“e. That the conduct of [F.W. and C.W.] throughout the pendency of this proceeding has shown it impractical and unlikely that [F.W. and C.W.] will take real and serious steps to eliminate or limit contact between the persons referenced within paragraphs (3)(b) through (3)(d), above, and the minor child;
“f. Furthermore, even if [F.W. and C.W.] were willing to limit such contact referenced in paragraph (3)(e), above, because [M.W.] owns their home, as well as the entire surrounding ... family property, [F.W. and C.W.] do not have the legal ability to exclude these persons from the ... family property;
“g. [C.W.] suffers from a severe heart condition, which has disabled him;
“h. [F.W. and C.W.] will be in their early seventies by the time this child reaches the age of majority;
“i. [F.W. and C.W.] have inadequate financial means to support the child, in that the [F.W. and C.W.’s] *956 sole source of income is the Social Security Disability received by [C.W.];
“4. Even if [F.W. and C.W.] were determined to be ‘fit’ and ‘able’ relatives of the child under [§] 12-15-314(a)(3)(c)[, Ala.Code 1975], the Court determines that custody or placement of the child with [F.W. and C.W.] would not be in the best interest of the child, for the same reasons stated within paragraph(s) (3)(a) through (3)(i), above, and also for the following reasons:
“a. Based on this Court’s observations, [F.W. and C.W.] have a proven track record of raising children that are ill-adjusted, unsuccessful and generally unproductive, demonstrated by the fact that, of their five adult children, two are convicted felons; one works as a ‘stripper;’ one lived within their home with her husband until shortly before trial; and the only adult child who appears successful has little to no contact with [F.W. and C.W.];
“b. The guardian ad litem’s recommendation and testimony supports this conclusion, and the Court notes that, from the testimony, the guardian ad litem went to extraordinary lengths in conducting a thorough investigation and forming his recommendation;
“5. The Court finds that granting [the foster parents] both legal and physical custody of the minor child to be in the best interest of the minor child;
“6. In making this determination the Court is mindful that the minor child has developed a bond with [F.W. and C.W.]; however, the Court determines that the uprooting effect of a change in custody is outweighed by the positive good which will come about by placing custody with the [the foster parents];
“7. Based upon the foregoing, it is therefore ORDERED, ADJUDGED and DECREED that the [the foster parents] are hereby granted legal and physical custody of [the child];
“8. No further review is set in this matter, unless requested by one of the parties.
“9. DHR is hereby Ordered to deliver custody of the minor child over to the [the foster parents] within twenty-four (24) hours of the date of this Order.”
Following entry of the judgment on January 4, 2013, F.W. filed a timely appeal to this court.[2]

Standard of Review

“In Ex parte Alabama Department of Human Resources, 682 So.2d 459 (Ala.1996), the Alabama Supreme Court stated the applicable principles of appellate review in the context of a challenge to a juvenile court’s custodial disposition of a dependent child:
“ ‘Appellate review is limited in cases where the evidence is presented to the trial court ore tenus. In a child custody case, an appellate court presumes the trial court’s findings to be correct and will not reverse without proof of a clear abuse of discretion or plain error. Reuter v. Neese, 586 So.2d 232 (Ala.Civ.App.1991); J.S. v. D.S., 586 So.2d 944 (Ala.Civ.App.1991). This presumption is especially applicable where the evidence is conflicting. Ex parte P.G.B., 600 So.2d 259, 261 (Ala.1992). An appellate court will not reverse the trial court’s judgment based on the trial court’s findings of fact unless the findings are so poorly *957 supported by the evidence as to be plainly and palpably wrong. See Ex parte Walters, 580 So.2d 1352 (Ala.1991).’
“682 So.2d at 460.”
J.J. v. J.H.W., 27 So.3d 519, 522 (Ala.Civ.App.2008).

Analysis

F.W. contends that the foster parents lacked standing to intervene in the case. F.W. asserts that § 12-15-307, Ala. Code 1975, a part of the Alabama Juvenile Justice Act, codified at § 12-15-101 et seq., Ala.Code 1975, prohibits foster parents from being made a party to a juvenile case. § 12-15-307 provides:
“Relative caregivers, preadoptive parents, and foster parents of a child in foster care under the responsibility of the state shall be given notice, verbally or in writing, of the date, time, and place of any juvenile court proceeding being held with respect to a child in their care.
“Foster parents, preadoptive parents, and relative caregivers of a child in foster care under the responsibility of the state have a right to be heard in any juvenile court proceeding being held with respect to a child in their care.
“No foster parent, preadoptive parent, and relative caregiver of a child in foster care under the responsibility of the state shall be made a party to a juvenile court proceeding solely on the basis of this notice and right to be heard pursuant to this section.”
F.W. also contends that the Foster Parents’ Bill of Rights Act, codified at § 38-12A-1 et seq., Ala.Code 1975, prohibits the foster parents from being made parties to an action in the juvenile court. § 38-12A-2 states, in pertinent part:
“The Department of Human Resources shall ensure that each foster parent shall have all of the following rights:
[[Image here]]
“(14) The right to notice and an opportunity to be heard, including timely information concerning all court hearings. This notification may include, but is not limited to, notice of the date and time of the court hearing, the name of the judge or hearing officer assigned to the case, the guardian ad litem, the location of the hearing, and the court docket number. The notification shall be made upon receipt of this information by the department. Although not a party to the case, the foster parent may attend court hearings at the discretion of the judge.”
These statutes, however, do not contain language that can be construed as barring absolutely foster parents, or for that matter relative caregivers like F.W. and C.W., from intervening in a dependency case to assert a claim for custody. Rather, the plain language of § 12-15-307 prohibits the court from making a foster parent or a relative caregiver, like F.W. or C.W., a party solely based on the rights established by the statute. Section 38-12A-2 states that foster parents are not to be deemed a party to the action based on the fact that they are required to be provided notice of, and a right to be heard at, a juvenile proceeding, but the plain language of the statute does not prohibit a foster parent from petitioning to intervene in an action before the juvenile court. Stated otherwise, both statutes provide that foster parents are entitled to notice and a right to be heard but are not to be compelled to be parties to the proceedings based on these rights. Similarly, we note that § 12-15-121(a), Ala.Code 1975, allows “[a] juvenile petition alleging ... dependency [to] be signed by any person 18 *958 years of age or older,” which would include a foster parent or a relative caregiver.
Under Rule 24, Ala. R. Civ. P., an interested party may petition a court to intervene in a civil case. Rule 24(b), which governs permissive intervention, provides that “[u]pon timely application anyone may be permitted to intervene in an action ... when an applicant’s claim or defense and the main action have a question of law or fact in common.” This court has routinely recognized that relative caregivers and foster parents may seek and be granted intervention in a dependency action. See B.V. v. Macon Cnty. Dep’t of Human Res., 14 So.3d 171, 175 (Ala.Civ.App.2009)(finding that foster parents failed to successfully intervene in the case); J.P. v. S.S., 989 So.2d 591 (Ala.Civ.App.2008)(aunt and uncle who had physical custody of child were allowed to intervene to petition for permanent custody); S.P. v. E.T., 957 So.2d 1127 (Ala.Civ.App.2005)(the juvenile court granted the petitions of the child’s aunt and foster parent to intervene in a dependency proceeding initiated by DHR). We conclude thát the juvenile court correctly granted the foster parents’ petition to intervene in this case, just as the juvenile court was correct in granting F.W. and C.W.’s motion to intervene. Thus, both sets of parties had standing to seek custody of the child before the juvenile court.
F.W. next contends that the juvenile court erred in denying her and C.W.’s request for custody and that the juvenile, court’s judgment and findings of fact are not supported by the evidence. “Whether a relative is suitable to assume custody of a child and whether such placement serves the best interests of the child are both questions of fact to be determined by the juvenile court.” R.L.M.S. v. Etowah Cnty. Dep’t of Human Res., 37 So.3d 805, 812 (Ala.Civ.App.2009) (citing T.B. v. Cullman Cnty. Dep’t of Human Res., 6 So.3d 1195, 1204-05 (Ala.Civ.App.2008)).
“A relative seeking custody of a dependent child has no vested right, constitutional or otherwise, to the child; rather, a relative may obtain custody of a dependent child only by proving that he or she is suitable, fit, and qualified to receive and care for the child and that the best interests of the child would be served by awarding custody of the child to the relative. See J.B. v. Cleburne County Dep’t of Human Res., 991 So.2d 273, 282-83 (Ala.Civ.App.2008). Naturally, a relative may appeal a judgment rejecting his or her petition for custody of a child on the ground of insufficiency of the evidence supporting that judgment. See, e.g., B.H. v. Marion County Dep’t of Human Res., 998 So.2d 475 (Ala.Civ.App.2008). That appeal would concern solely whether the record contains sufficient evidence to support a finding that the relative is unfit, a finding that the relative is unqualified to receive and care for the child, or a finding that the best interests of the child would not be served by placement with the relative.... Id.”
G.P. v. Houston Cnty. Dep’t of Human Res., 42 So.3d 112, 123 (Ala.Civ.App.2009) (opinion on application for rehearing).
The goals of the Alabama Juvenile Justice Act include “preserv[ing] and strengthen[ing] the family of the child whenever possible” and providing “a preference at all times for the preservation of the family.” § 12 — 15—101(b)(1) and (8), Ala. Code 1975. Further § 12-15-314, Ala. Code 1975, provides a statutory preference for relative placement of a dependent child. That statute states:
“(a) If a child is found to be dependent, the juvenile court may make any of the following orders of disposition to protect the welfare of the child:
[[Image here]]
“(3) Transfer legal custody to any of the following:
*959 [[Image here]]
“c. A relative or other individual who, after study by the Department of Human Resources, is found by the juvenile court to be qualified to receive and care for the child. Unless the juvenile court finds it not in the best interests of the child, a willing, fit, and able relative shall have priority for placement or custody over a non-relative.”
Despite the statutory preference for a willing, fit, and able relative, the law does not require the juvenile court to award custody to a relative caregiver “without regard to the best interest of the child and without an eye toward achieving permanency for the child.” B.H. v. Marion Cnty. Dep’t Human Res., 998 So.2d 475, 480 (Ala.Civ.App.2008). In B.H. this court held:
“[A] related caregiver may, in some circumstances, be a suitable permanent alternative for a child; however, the relative preference does not require an automatic award of custody to a ‘fit and willing’ relative or supplant the juvenile court’s responsibility to determine whether that related caregiver is, in fact, the most appropriate placement to ensure permanency and stability in the child’s life.”
Id. at 481 (citing 42 U.S.C. § 671(a)(15)(C) and (E)(ii)).
In the present case, F.W. contends that the juvenile court made erroneous findings of fact, on which it based its determination that F.W. and C.W. were not “fit” and “able” relatives of the child. Those findings, however, were made following the presentation of ore tenus evidence and after “long and careful deliberation.”
“ ‘ “[T]he trial court has the advantage of observing the witnesses’ demeanor and has a superior opportunity to assess their credibility, [and, therefore, an appellate court] cannot• alter the trial court’s judgment unless it is so unsupported by the evidence as to be clearly and palpably wrong.” ’ Ex parte Fann, 810 So.2d 631, 636 (Ala.2001) (quoting Ex parte D.W.W., 717 So.2d 793, 795 (Ala.1998)). The trier of fact, and not this court, has the duty of resolving conflicts in the evidence. Ethridge v. Wright, 688 So.2d 818, 820 (Ala.Civ.App.1996).
“ ‘ “[The appellate court is not] allowed to reweigh the evidence in this case. This [issue] ... turns on the trial court’s perception of the evidence. The trial court is in the better position to evaluate the credibility of the witnesses ... and the trial court is in the better position to consider all of the evidence, as well as the many inferences that may be drawn from that evidence....’”
“Ex parte Patronas, 693 So.2d 473, 475 (Ala.1997) (quoting Ex parte Bryowsky, 676 So.2d 1322, 1326 (Ala.1996)).”
D.C.S. v. L.B., 84 So.3d 954, 961-62 (Ala.Civ.App.2011).
In its judgment, the juvenile court concluded that the evidence established that F.W. and C.W., although they may have been willing to accept custody of the child, were not “fit” and “able” and that placement with them would not have been in the child’s best interest. The juvenile court expressed concern with various relatives of F.W. and C.W. who lived in close proximity to their residence or who frequently visited the family property. The evidence supports the finding that J.D.W., who had a history of drug convictions and domestic violence, resided in a camper or a trailer in close proximity to F.W. and C.W.’s residence. Although F.W. contends that the testimony indicated that the camper and trailer were located next to M.W.’s home, and not in close proximity to her and C.W.’s home, the evidence as to *960 this issue is disputed. Testimony also indicates that J.D.W.’s trailer was only a few dozen steps from F.W. and C.W.’s home. The record also supports the juvenile court’s finding that F.W. assisted J.D.W. in purchasing a mechanism that she believed he would use to grow tomatoes but that he ultimately used to cultivate marijuana on the family property. The juvenile court’s finding that D.W.M., C.W.’s sister, had “recently lived on the family property for approximately two to three weeks” following an arrest for manufacturing crystal methamphetamine is supported by the testimony. F.W. disputes the finding that S.W. had recently been employed as an adult dancer, but F.W.’s own testimony at trial supports the finding that S.W. had been employed in such a capacity.
There existed additional evidence to support the juvenile court’s conclusions that F.W. and C.W. live in a home with no lease or other formal arrangement with M.W., the property owner, thus calling into question their legal right to exclude others from the property.
Further, the juvenile court questioned F.W. and C.W.’s physical ability to raise the child. Both C.W. and F.W. are 55 years old and have health issues. F.W. testified that she suffers from fibromyalgia and arthritis, although she stated that she has both under control. She stated that she had suffered panic attacks in the past. She testified that she no longer drives and that .she has not renewed her driver’s license since it was revoked 1991 for a conviction of driving under the influence. The record reveals that C.W. had had three recent heart attacks and that he had a defibrillator implanted to regulate his heart condition. Both F.W. and C.W. admitted to smoking at least half a pack of cigarettes per day. The record reveals that the sole source of income for F.W. and C.W. was C.W.’s disability payments.
As the trier of fact, the juvenile court had the opportunity to observe 15 witnesses over 2 days of receiving testimony. The witnesses included F.W., C.W., and several of their children and relatives. The juvenile court was in a position to judge for itself how the witnesses presented themselves and “to judge, based on the appearance and demeanor of the witnesses presented to it, which included [some of F.W. and C.W.’s children], the results of [F.W. and C.W.’s] parenting skills.” B.H., 998 So.2d at 482 (citing J.W. v. C.H., 963 So.2d 114, 119 (Ala.Civ.App.2007)). The juvenile court carefully considered all arguments advanced by all parties, and it determined that it was in the best interest of the child to be in the custody of the foster parents. That is a finding of fact for the trial court to make, and a finding that the appellate court is prohibited from making. Ex parte R.T.S., 771 So.2d 475, 476-77 (Ala.2000) (noting that the appellate court must not engage in fact-finding or “reweigh the evidence and substitute its judgment for that of the trial court”). A trial court’s discretionary ruling must be affirmed if it is supported by “any credible evidence.” Ex parte D.W.W., 717 So.2d 793, 795 (Ala.1998). The decision to award custody to the foster parents is within the discretion afforded to the juvenile court. The record does not establish that the discretion afforded to that court was abused, nor is a plain error presented. We therefore affirm the juvenile court’s judgment awarding custody of the child to the foster parents and denying F.W.’s petition for custody.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ. concur.

. The record indicates that the juvenile court ultimately placed the petition to terminate the *953 mother’s parental rights on its administrative docket pending the outcome of the dependency case. DHR’s response to the amended petition stated that:
“[t]he [foster parents'] petition and their attempt to amend it is ‘premature’ in this action in that DHR has not determined that the child will not be reunited with her [sic] parents, or that any type of termination actions/adoption actions will ever be initiated. Until DHR has exhausted the statutorily required efforts to reunite this family and termination efforts are indicated, the [foster parents’] petition to intervene is ‘premature’ and should be denied under the previously established precedent set in K.W.[ v. J. G., 856 So.2d 859 (Ala.Civ.App.2003)].”

. The notice of appeal indicates that only F.W. appealed the juvenile court’s judgment. Also, DHR did not participate in this appeal.