On Application for Rehearing

MOORE, Judge.
This court’s opinion of February 12, 2016, is withdrawn, and the following is substituted therefor.
T.B. (“the father”) appeals from a judgment entered by the Lee Juvenile Court (“the juvenile court”) adjudicating C.L. (“the child”) dependent, awarding custody of the child to M.G. and J.G. (“the custodians”), and finding that the Lee County Department of Human Resources (“DHR”) had “made reasonable efforts to prevent removal and/or reunite [the] child and [the] parents.” We affirm.

Procedural History

On August 13, 2014, DHR filed a petition alleging that the child was dependent (case no, JU-14-317.01), On August 21, 2014, the father was adjudicated the father of the child. On September 9, 2014, the father petitioned for custody of the child (case no. JU-14-317.02). After a trial, the juvenile court entered a judgment pertaining to both petitions on June 22, 2015, adjudicating the child dependent, awarding custody of the child to the custodians, and awarding the father unsupervised visitation with the child on the first, third, and fifth weekends of every month, as well as on certain holidays. The juvenile court also ordered that, beginning October 16, 2015, the father’s visitation would increase to “every other Friday from 5 pm until the following Wednesday at 9am” and that DHR was to continue to provide supervision services.
On July 1, 2015, the father filed a post-judgment motion. The juvenile court entered an order on July 20, 2015, purporting to deny the father’s postjudgment motion; however, that order was a nullity because the motion was deemed denied by operation of law on July 15, 2015. See Rule 1(B), Ala. R. Juv. P.; Rule 59.1, Ala. R. Civ. P. On July 6, 2015, the father filed his notice of appeal.[1]

*1249
Fads

The child was born on July 29, 2011. The child’s mother testified that she had allowed A.L., who was her boyfriend at the time, to sign the child’s birth certificate as the child’s father. She testified that the father had come and seen the child when she was born and that he had seen the child approximately three times from the time the child was six months old until the child was a year old. The mother testified that the father had known that he was the child’s father. The father testified that he had thought he could be the child’s father but that he had not known for sure that he was the father until he had taken a DNA test that confirmed his paternity. The father admitted that he had failed to take any initiative to confirm whether the child was his. The father testified that he had lost contact with the mother and the child for approximately a year after the child turned one.
The mother testified that, on July 12, 2012, she and the child began living with her boyfriend, M.G., Jr., and his parents, who are the custodians. The mother testified that, sometime thereafter, the father began visiting with the child again at the father’s mother’s home for a few hours at a time and that he had maintained that visitation schedule for approximately three months, at which time, she said, she told him that he could no longer visit the child until he began paying child support. She testified that, on some occasions, the child had returned from visits with the father and her diaper would not have not been changed. The mother also testified that, sometime shortly before the trial, the custodians had kicked their son and her out of their house because they were using drugs. She testified that the father had not been aware of her drug problem. She testified that she had entered into a safety plan with DHR, pursuant to which she agreed that the child would live with the custodians. The mother testified that the father had never paid child support for the child.
Mindy Carter, a DHR caseworker, testified that she had met with the father in December 2014 at his house. She testified that the father’s house was very clean, that there was a room set up for the child, that there was plenty of food in the house, and that the utilities were active. She testified that the father had failed to show up for a subsequent meeting with her. She also testified that she had not been able to make contact with the father but that there had been no proven concerns about the child being with the father. She testified that, during a visitation exchange, she had observed the child showing no fear of going with the father. The mother also admitted that DHR’s court report indicated that the father was forming a strong bond with the child. Carter testified that no services had been offered to the father. She testified that, at the time of the trial, it was her recommendation that the father complete a parenting class to help him with co-parenting as well as with age-appropriate parenting skills for the child.
At the time of the trial, the father had been exercising unsupervised visitation with the child on the first, third, and fifth weekends of each month since February 2015 pursuant to a pendente lite order. He testified that he had missed two visitations with the child because he had had to work. The mother testified that the father’s weekend visitations had been going “ok” but that the child had returned from visitations sweaty and with ant bites all over her.
The father testified that he had moved approximately one month before the trial. *1250 He testified that the child has her own bedroom and toys and that the house has food and working utilities. He testified that he is employed and that he also receives food stamps. He testified that he is able to provide for the child. He admitted that, although the juvenile court had, during the pendency of the underlying actions, ordered him to put aside $300 per month to prove that he could afford to take care of the child, he had failed to do so. He testified that he had passed all drug tests. He admitted that his 17-year~old girlfriend had spent the night at his house when the child was present.

Discussion

On appeal, the father argues that the juvenile court erred in determining that the child was dependent. According to Ala.Code 1975, § 12-15-102(8), a part of the Alabama Juvenile Justice Act (“the AJJA”), Ala.Code 1975, § 12-15-101 et seq., a “dependent child” is
“a. A child who has been adjudicated dependent by a juvenile court and is in need of care or supervision and meets any of the following circumstances:
“1. Whose parent, legal guardian, legal custodian, or other custodian subjects the child or any other child in the household to abuse, as defined in subdivision (2) of Section 12-15-301 or neglect as defined in subdivision (4) of Section 12-15-301, or allows the child to be so subjected.
“2. Who is without a parent, legal guardian, or legal custodian willing and able to provide for the care, support, or education of the child.
“3. Whose parent, legal guardian, legal custodian, or other custodian neglects or refuses, when able to do so or when the service is offered without charge, to provide or allow medical, surgical, or other care necessary for the health or well-being of the child.
“4. Whose parent, legal guardian, legal custodian, or other custodian fails, refuses, or neglects to send the child to school in accordance with the terms of the compulsory school attendance laws of this state.
“5. Whose parent, legal guardian, legal custodian, or other custodian has abandoned the child, as defined in subdivision (1) of Section 12-15-301.
“6. Whose parent, legal guardian, legal custodian, or other custodian is unable or unwilling to discharge his or her responsibilities to and for the child.
“7. Who has been placed for care or adoption in violation of the law.
“8. Who, for any other cause, is in need of the care and protection of the state.”
The father points out that because he demonstrated his financial commitment to the child, his maturity, and his parenting ability sufficiently for the juvenile court to award him extensive unsupervised parenting time with the child, the juvenile court must have determined that he was a fit and proper custodian. See J.W. v. T.D., 58 So.3d 782, 793-94 (Ala.Civ.App.2010) (Moore, J., dissenting) (arguing that a judgment adjudicating a child dependent but awarding a noncustodial parent long periods of unsupervised visitation is inconsistent). The father argues that, if he is fit to parent the child, as the award of unsupervised visitation implies, then the child cannot be considered a dependent child.
In G.H. v. Cleburne County Department of Human Resources, 62 So.3d 540, 544 (Ala.Civ.App.2010), this court held “that a child with a fit noncustodial parent willing to assume custody can properly be declared dependent” if the child is dependent as to the custodial parent. Although this *1251 writer does not agree that the legislature intended that result in drafting § 12-15-102(8), see also Ex parte W.E., 64 So.3d 637, 638 (Ala.2010) (Murdock, J., concurring specially) (“A child cannot be dependent vis-a-vis one parent but not dependent as to the other parent. If the child is not dependent ‘as to one parent,’ then the child is not dependent.), neither G.H. nor any other cases with similar holdings, see, e.g., T.K v. M.G., 82 So.3d 1 (Ala.Civ.App. 2011), has ever been overruled. In this case, the child was born out of wedlock and, as such, into the legal and physical custody of the mother. See Rainer v. Feldman, 568 So.2d 1226 (Ala.1990). The father does not challenge the juvenile court’s judgment to the extent that it found that the mother was unable or unwilling to provide adequate care and supervision for the child and that the child was dependent as to the mother, as she stipulated. Therefore, the juvenile court did not en* in adjudicating the child to be dependent.
We recognize that the juvenile court did not base its dependency determination solely on the dependency of the child as to the mother. The juvenile court also found that the child was dependent as to the father, who is described in the judgment as “unprepared financially” and lacking in “terms of general parenting/maturity.” The juvenile court also concluded that the father had made “insufficient efforts.” Even if the juvenile court erred in finding the child dependent as to father, as he argues, we may still affirm the judgment on the legal ground explained above, namely, that the child was dependent as to the mother. See Liberty Nat’l Life Ins. Co. v. University of Alabama Health Servs. Found., P.C., 881 So.2d 1013, 1020 (Ala.2003) (“[TJhis Court will affirm the trial court on any valid legal ground presented by the record, regardless of whether that ground was considered, or even if it was rejected, by the trial court.”). Hence, we do not consider whether the evidence supports the juvenile court’s factual determinations regarding the father or whether those factual determinations support a legal conclusion that the child was dependent as to the father.
The father next argues that the juvenile court erred by finding that DHR had made reasonable efforts to unite him with the child. A judgment terminating parental rights based on an erroneous finding that DHR made reasonable efforts may be subject to reversal. See H.H. v. Baldwin Cty. Dep’t of Human Res., 989 So.2d 1094, 1108-09 (Ala.Civ.App.2007) (opinion on return to remand) (Per Moore, J., with two judges concurring in the result). However, based on due-process concerns, a state ordinarily must exhaust all viable alternatives before terminating parental rights, see Ex parte Beasley, 564 So.2d 950 (Ala.1990), which, except in extraordinary circumstances, see 12-15-312(c), Ala.Code 1975, requires the state to prove that reasonable efforts to save the family have failed. See 12-15-319(a)(7), Ala.Code 1975. On the other hand, the AJJA does not provide that a juvenile court must exhaust all reasonable efforts before finding a child dependent such that an erroneous finding on that point generally would require reversal of a dependency judgment.
Section 12-15-312, Ala.Code 1975, provides, in pertinent part:
“(a) When the juvenile court enters an order removing a child from his or her home and places the child into foster care or custody of the Department of Human Resources pursuant to this chapter [i.e., the AJJA], the order shall contain specific findings, if warranted by the evidence, within the following time *1252 periods while making child safety the paramount concern:
“(1) In the first order of the juvenile court that sanctions the removal, whether continuation of the residence of the child in the home would be contrary to the welfare of the child. This order may be the pick-up order that the juvenile court issues on the filing of a dependency petition.
“(2) Within 60 days after the child is removed from the home of the child, whether reasonable efforts have been made to prevent removal of the child or whether reasonable efforts were not required to be made.
“(3) Within 12 months after the child is removed from the home of the child and not less than every 12 months thereafter during the continuation of the child in out-of-home care, whether reasonable efforts have been made to finalize the existing permanency plan.
“(b) As used in this chapter, reasonable efforts refers to efforts made to preserve and reunify families prior to the placement of a child in foster care, to prevent or eliminate the need for removing the child from the home of the child, and to make it possible, for a child to return safely to the home of the child....”
See also § 12-15-301(10), Ala.Code 1975 (defining “reasonable efforts” similarly to § 12-15-312(b)).
Section 12-15-312 does not impose upon DHR a general duty to exert reasonable efforts upon the commencement of every dependency action. By its plain language, § 12-15-312 applies only “[w]hen the juvenile court enters an order removing a child from his or her home and places the child into foster care or custody of the Department of Human Resources pursuant to this chapter [i.e., the AJJA].” § 12-15-312(a). See R.T.B. v. Calhoun Cty. Dep’t of Human Res., 19 So.3d 198, 204 (Ala.Civ.App.2009) {“When a child is removed from the custody of his or her parents due to dependency, the juvenile court has a duty in most cases to exert reasonable efforts to reunite the family as quickly and safely as possible.” (emphasis added)). In this case, the child has been residing with the custodians since she was 11 months old. Throughout the dependency proceedings, the juvenile court has maintained the child in the same home. The child was never placed into foster care or into the custody of DHR. See H.H., 989 So.2d at 1107-08 (explaining that the federal Adoption and Safe Families Act of 1997, Public L. No. 105-89, 111 Stat. 2115 (1997), codified at 42 U.S.C. § 670 et seq., requires states to make reasonable efforts to prevent or reduce the need for foster-care programs financed, in part, by the federal government). Hence, the juvenile court had no duty under § 12-15-312 to make any specific findings regarding reasonable efforts.
A juvenile court may, for the best interests of the child, order DHR to make reasonable efforts in order to assist a noncustodial parent in gaining custody of his or her child, but the juvenile court did not enter any such order in this case. Section 12-15-101(b)(3), Ala.Code 1975, establishes as one of the goals of juvenile courts
“reuniting] a child with his or her parent or parents as quickly and as safely as possible when the child has been removed from the custody of his or her parent or parents unless reunification is judicially determined not to be in the best interests of the child.”
Section 12—15—101(b)(3) does not apply in this case because the child has never been “removed” from the “custody” of the father so that the juvenile court should have *1253 ordered DHR to make reasonable efforts to “reunite” the father with the child. The father has never exercised custody of the child. The father and the child have never resided together in a shared family home. Until this litigation, the father had only sporadically associated with the child. The father and the child have never been separated by an order of a court or other state intervention. Even the broad policy goal embodied in § 12—15—101 (b)(3) does not require the juvenile court to order DHR to make reasonable efforts to assist the father in gaining custody of the child in this case.
In the final judgment, the juvenile-court judge checked a box on a preprinted form to indicate that “DHR made reasonable efforts to prevent removal and/or reunite [the] child and [the] parents.” The father argues that the evidence does not support that finding. Assuming, without deciding, that the father is correct on this point, the father has failed to show that such error prejudices his substantial rights. See Rule 45, Ala. R.App. P. (“No judgment may be reversed ,.., unless in the opinion of the court to which the appeal is taken or application is made, after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties.”). The father has not shown that he had any legal right, whether arising by statute, caselaw, or court order, to the reasonable efforts of DHR. Therefore, any error committed by the juvenile court as to this issue would constitute no more than harmless error that does not mandate reversal of the juvenile court’s judgment.
Finally, the father argues that the juvenile court erred in awarding custody of the child to the custodians because, he says, that award violates Ala.Code 1975, § 12-15-314(a)(3)c. That Code section provides:
“(a) If a child is found to be dependent, the juvenile court may make any of the following orders of disposition to protect the welfare of the child:
[[Image here]]
“(3) Transfer legal custody to any of the following:
[[Image here]]
“c. A relative or other individual who, after study by the Department of Human Resources, is found by the juvenile court to be qualified to receive and care for the child. Unless the juvenile court finds it not in the best interests of the child, a willing, fit, and able relative shall have priority for placement or custody over a non-relative.”
(Emphasis added.) The plain language of § 12-15-314(a)(3)c. requires a juvenile court to award custody to an appropriate relative over a nonrelative unless the juvenile court finds it is not in the best interest of the child. See C.K.L. v. C.L.M., 192 So.3d 18 (Ala.Civ.App.2015). In this case, the juvenile court impliedly found[2] that, at the time of the trial,[3] it was in the best interest of the child to remain in the custo *1254 dy of the custodians with whom the child had been living for the three years preceding the trial. Based on our review of the record, we cannot say that the juvenile court exceeded its discretion in making its custodial disposition. See F.W. v. T.M., 140 So.3d 950, 960 (Ala.Civ.App.2013) (holding that custodial disposition of dependent child to a nonrelative is a discretionary ruling).

Conclusion

Based on the foregoing, we affirm the judgment of the juvenile court.
APPLICATION GRANTED; OPINION OF FEBRUARY 12, 2016, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
PITTMAN, THOMAS, and DONALDSON, JJ., concur.
THOMPSON, P.J., concurs in the result, without writing.

. The father’s notice of appeal was held in abeyance and was deemed filed upon the denial, by operation of law, of the father's post- *1249 judgment motion on July 15, 2015. See Rule 4, Ala. R.App. P.

. On application for rehearing, the father argues that, pursuant to Rule 25(D), Ala. R. Juv. P., the juvenile court was required to make specific findings regarding its disposition of the child. This court does not consider arguments made for the first time on rehearing. See Ex parte Lovejoy, 790 So.2d 933, 938-39 (Ala.2000). Nevertheless, we determine that the juvenile court substantially complied with Rule 25(D) by setting out its custody and visitation awards in writing.

. We note that the juvenile court awarded the father escalating visitation with the child, ordered DHR to continue supervising the case, and stated at the trial that it would consider changing custody to the father in the future.